# IN THE UNITED STATES COURT OF APPEALS OF THE TENTH CIRCUIT

## CASE NO. _____

_____

*In Re*

**KENNETH EUGENE BARRETT**, *Movant*

[Death Penalty Case]

_____

## PETITION FOR WRIT OF MANDAMUS

## TO UNITED STATES DISTRICT JUDGE

## JAMES H. PAYNE

_____

DAVID B. AUTRY, OBA# 11600
Attorney at law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone: 405-521-9600

DANIEL J. BRODERICK
Federal Defender

TIVON SCHARDL, Fla. Bar No. 73016
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: 916-498-6666

Attorneys for Petitioner
KENNETH EUGENE BARRETT

**TABLE OF CONTENTS**

I. ISSUE PRESENTED ........................................................................... 2

II. STANDARD OF REVIEW ................................................................ 2

    A. Mandamus is the Appropriate Vehicle for Review ..................................... 2

    B. Standard of Review ................................................................ 2

III. FACTS NECESSARY TO UNDERSTAND THE ISSUE ................................... 3

    A. The Underlying Convictions and Sentences ................................... 3

    B. The Pending Post-conviction Proceedings ................................... 3

        1. Appointment of counsel and motion for equitable tolling ............... 3

        2. Motion for post-conviction relief raising judicial misconduct ......... 4

        3. Motion to disqualify Judge Payne ................................... 5

        4. Order denying disqualification and recusal ................................... 5

            a. Response regarding ex parte communications ..................... 6

            b. Response regarding administrative actions ......................... 6

            c. Response regarding the judge's independent factual investigation ................................................................ 7

        5. Proceedings on Mr. Barrett's amended § 2255 petition ................... 7

IV. REASONS WHY THE WRIT SHOULD BE GRANTED ................................... 8

    A. The Applicable Law ................................................................ 8

        1. Constitutional authority ................................................... 9

        2. Statutory Authority ................................................... 9

a. 28 U.S.C. § 455(a): appearance of bias ................................. 9

b. 28 U.S.C. § 455(b): actual bias & disqualifying knowledge
.................................................................................... 10

3. The heightened need for reliability in death penalty cases ............. 10

B. Argument ....................................................................................... 11

1. Any fully informed person would question Judge Payne's
impartiality in this matter ................................................................ 12

a. Judge Payne's concealment of his *ex parte* communications
with prosecutors and the necessity of adjudicating claims
based on those communications constitute grounds for
disqualification and recusal ................................................. 12

b. Judge Payne's administrative actions and the necessity of
adjudicating claims involving those decisions constitute
grounds for disqualification and recusal ............................. 17

2. Recusal is required under 28 U.S.C. § 455(b) due to Judge Payne's
status as a witness .......................................................................... 21

3. Judge Payne's independent investigation of facts underlying the
denial of Mr. Barrett's motion for tolling constitutes grounds for
disqualification and recusal .......................................................... 24

V. REQUEST FOR EVIDENTIARY HEARING ..................................................... 29

VI. RELIEF REQUESTED .................................................................................... 30

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Life Insurance v. Lavoie*, 475 U.S. 813 (1986) ........................................................ 17

*Bracy v. Schomig*, 286 F.3d 406 (7th Cir. 2002) ........................................................ 9, 11, 12

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................ 15

*Brokaw v. Mercer County,* 235 F 3d 1000 (7th Cir. 2000) ........................................................ 10

*In re Edgar*, 93 F.3d 256 (7th Cir. 1996) ........................................................ 26

*Gardner v. Florida*, 430 U.S. 349 (1977) ........................................................ 11

*Grand Opera Co. v. Twentieth Century-Fox Film Corp.*,
235 F.2d 303 (7th Cir.1956) ........................................................ 29

*Johnson v. Carroll*, 369 F.3d 253 (3d Cir.2004) ........................................................ 29

*Lankford v. Idaho*, 500 U.S. 110 (1991) ........................................................ 17

*Liteky v. United States*, 510 U.S. 540 (1994) ........................................................ 10

*Lopez v. Behles (In re American Ready Mix, Inc.)*,
14 F.3d 1497 (10th Cir.1994), *cert. denied,* 513 U.S. 818 ........................................................ 2, 3

*Maez v. Mountain States Telegraph & Telegraph, Inc.*,
54 F.3d 1488 (10th Cir. 1995) ........................................................ 3

*Mayberry v. Pennsylvania*, 400 U.S. 455 (1971) ........................................................ 21

*In re Murchison*, 349 U.S. 133 (1959) ........................................................ 9, 17

*Murchu v. United States*, 926 F.2d 50 (1st Cir. 1991) ........................................................ 30

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) ........................................................ 9

*Taylor v. Hayes*, 418 U.S. 488 (1974) ........................................................ 20, 21

*Tumey v. Ohio*, 273 U.S. 510 (1927) ........................................................ 9

*In re United States*, 441 F.3d 44 (1st Cir.2006) ........................................................ 26

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) ................................................ 2, 9

*United States v. Gonzalez*, 150 F.3d 1246 (10th Cir. 1998) ....................................... 25

*United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994) ........................................ 9

*U.S. v. Barrett*, 496 F.3d 1079 (10th Cir 2007) ................................................. passim

*Ward v. Village of Monroe*, 409 U.S. 57 (1972) ......................................................... 9

*Weston v. Mann (In re Weston)*, 18 F.3d 860 (10th Cir. 1994) ..................................... 3

*Woods v. Georgia*, 450 U.S. 261 (1981) .................................................................. 24

*Woodson v. North Carolina*, 428 U.S. 280 (1976) .................................................... 11

*York v. AT & T*, 95 F.3d 948 (10th Cir.1996) .......................................................... 29

## FEDERAL STATUTES

18 U.S.C. § 3005 ................................................................................... 22, 23

18 U.S.C. § 3432 ........................................................................................ 14

18 U.S.C. § 3599(a)(2) ....................................................................... 3, 27, 29

28 U.S.C. § 455(a) .............................................................................. passim

28 U.S.C. § 2255 ........................................................................... 1, 4, 26, 27

## MISCELLANEOUS

Elizabeth G. Thornburg, *The Curious Appellate Judge:*
    *Ethical Limits on Independent Research*, 28 Rev. Litig. 131(Fall 2008) ................... 25

**IN THE UNITED STATES COURT OF APPEALS OF THE TENTH CIRCUIT**

**CASE NO. _____**

_____

*In Re*

**KENNETH EUGENE BARRETT**, *Movant*
_____

**PETITION FOR WRIT OF MANDAMUS**

**TO UNITED STATES DISTRICT JUDGE**

**JAMES H. PAYNE**
_____

Kenneth Eugene Barrett, by and through his undersigned counsel, pursuant to Rule 21, Fed. R. App. P., and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution moves this Court to issue a writ of mandamus to United States District Judge James H. Payne to vacate his Order of September 11, 2009 denying Petitioner s Motion to Disqualify (CV-09-105, Doc. 66),[1] and any other orders entered by Judge Payne after Petitioner's Motion to Disqualify was filed, and to recuse himself and refrain from presiding in the 28 U.S.C. 2255 Proceeding filed on behalf of Petitioner in the Eastern District of Oklahoma styled *Kenneth Eugene Barrett vs. United States of America,* CV-09-00105.

---

[1] The Order at issue, Doc 66 CV-09-105 is attached hereto as Exhibit A. The Motion to Disqualify, Doc 45, filed by Mr. Barrett is also attached and marked Exhibit B.

1

## I.    ISSUE PRESENTED

Whether the trial judge erroneously denied a motion to disqualify him based upon the actual bias and prejudice or the appearance of bias and prejudice arising from the judge's actions including (1) engaging in a partially unrecorded *ex parte* proceeding with prosecutors, then misrepresenting the contents of that proceeding to defense counsel, then continuing to conceal the content of the *ex parte* communications while the prosecution gained a strategic advantage based on the defense's ignorance; (2) the judge's status as a material witness to extra-record events that are at issue in Petitioner's claims for relief; (3) the necessity of the judge to adjudicate the propriety of his own quasi-judicial, and non-judicial, administrative actions which are at issue in Petitioner's claims for relief; and (4) the judge's independent Internet investigation in search of a factual basis upon which to deny a motion by Petitioner conceded by the Government to have merit?

## II.    STANDARD OF REVIEW

### A.    Mandamus is the Appropriate Vehicle for Review

An order denying a motion to recuse or disqualify a judge is not immediately appealable. *Lopez v. Behles (In re American Ready Mix, Inc*.), 14 F.3d 1497, 1499 (10th Cir.1994), *cert. denied,* 513 U.S. 818.  Mandamus is an appropriate vehicle by which to challenge a district court's denial of a recusal motion.  *Lopez v. Behles, supra*; *United States v. Cooley,* 1 F.3d 985, 996 n.9 (10th Cir. 1993).

### B.    Standard of Review

2

Although a district court's denial of a motion to recuse is reviewed on appeal for an abuse of discretion, *Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1508 (10th Cir. 1995), on mandamus the higher standard dictated by that writ governs the review, *In re American Ready Mix*, 14 F.3d at 1501. Mandamus is available only upon a showing of a clear and indisputable right to relief. *Weston v. Mann (In re Weston)*, 18 F.3d 860, 864 (10th Cir. 1994).

## III. FACTS NECESSARY TO UNDERSTAND THE ISSUE

### A. The Underlying Convictions and Sentences

Mr. Barrett was convicted by a jury in the United States District Court for the Eastern District of Oklahoma, Hon. James H. Payne, presiding, of three felony counts of using and carrying a firearm during and in relation to drug-trafficking crimes, resulting in the death of a state law enforcement officer. He was sentenced to two life sentences without possibility of release and to death.[2] *U.S. v. Barrett*, CR 04-115, Doc 285. The convictions and sentences were affirmed on appeal. *U.S. v. Barrett*, 496 F.3d 1079 (10th Cir 2007), *cert. denied,* (March 17, 2008).

### B. The Pending Post-conviction Proceedings

#### 1. *Appointment of counsel and motion for equitable tolling*

---

[2] Prior to the federal trial, Mr. Barrett was twice tried in the Oklahoma courts for the same conduct. During those trial, Mr. Barrett was represented by attorney John Echols. The first trial resulted in a hung jury, and the second trial resulted in an acquittal of murder and conviction for voluntary manslaughter.

Pursuant to 18 U.S.C. § 3599(a)(2), David B. Autry, of Oklahoma City, and Tivon Schardl, of the Capital Habeas Unit of the Federal Defender for the Eastern District of California, were substituted as counsel of record in place of appellate counsel, Mark Henriksen, and trial and appellate counsel, Roger Hilfiger.  CR 04-115, Doc. 374.

On February 9, 2009, Petitioner filed a Motion for Emergency Order Tolling Time. CR 04-115, Doc. 382.  Exhibit C.  The Government conceded unique and extraordinary circumstances existed which justified equitable tolling of the statute of limitations.  CR-04-115, Doc 390 at 1.  Exhibit D.  On February 27, 2009, citing information obtained in an Internet search, Judge Payne denied the motion.  CR 04-115, Doc. 397.  Exhibit E.

### 2.	*Motion for post-conviction relief raising judicial misconduct*

On March 16, 2009, Mr. Barrett filed a motion for relief pursuant to 28 U.S.C. § 2255.  *Kenneth Eugene Bennett vs. United States of America*,  CV-09-105, Doc. Nos. 1 & 2.[3]  On March 17, 2009, he filed a Corrected Motion to Vacate with a previously inadvertently omitted verification.  Doc 3.  Mr. Barrett filed 173 Exhibits in support of his Motion to Vacate.  Docs. 1, 3, 8-43.  In the introductory portion of his motion, and in his prayer for relief, Mr. Barrett alerted the district court that several of his claims raised allegations of judicial and administrative impropriety by Judge Payne, and sought the judge's recusal.  The motion and attached exhibits relied upon extra-record evidence of Judge Payne's statements related to his administrative actions in the case, and extra-

---

[3]  Unless otherwise indicated, all document numbers referenced hereinafter refer to Mr. Barrett's § 2255 proceedings, Case No. CV-09-105.

record evidence regarding the effects of his misrepresentations regarding *ex parte* communications with prosecutors prior to trial.

### 3. Motion to disqualify Judge Payne

On May 29, 2009, Mr. Barrett filed a separate Motion to Disqualify Judge Payne under 28 U.S.C. § 455. He relied upon declarations of witnesses regarding (1) Judge Payne's off-the-record administrative actions regarding the appointment of trial counsel, and other administrative actions that violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights and rendered him a material witness to the judge's own misconduct; (2) Allegations that Judge Payne engaged in misconduct with prosecutors by engaging in a partially unrecorded *ex parte* hearing then misrepresenting the substance of that hearing to defense counsel; and, (3) Allegations that the judge's independent factual investigation to support a denial of the Motion for Equitable Tolling violated the code judicial ethics and raised the actual or appearance of bias and disqualified the judge under § 455(b). Exhibit B at 1-2.

### 4. Order denying disqualification and recusal

On September 11, 2009, Judge Payne denied the Motion to Disqualify. Doc. 66. Exhibit A. The judge found the following:

> [Mr. Barrett] failed to establish either that a reasonable person knowing all of the facts would question this Court s impartiality, that this Court has a personal bias or prejudice against Petitioner or personal knowledge of disputed evidentiary facts concerning this proceeding, 28 U.S.C. § 455 (b)(1); or that this Court has served in governmental employment and in such capacity participated as counsel, advisor or material witness concerning the proceeding or expressed an opinion concerning the merits of

the particular case or controversy.  28 U.S.C. § 455(b)(3).  Additionally, this Court does not anticipate being a witness in any proceedings in this case.  28 U.S.C. § 455 (5)(iv).

Doc. 66 at 21.  It is this Order which is the subject of review in this petition.

### a.  Response regarding ex parte communications

Judge Payne determined "[b]ased solely on the government's allegations . . . the Court was obligated to hold an *ex parte* hearing to ascertain the basis for the government's alleged safety concerns."   Doc. 66 at 8.  The district court found that he had not prejudged anything, and the transcript revealed the Court's frustration with the Government's belated disclosure that it perceived a problem with seven witnesses.   Doc. 66 at 9.  After a lengthy recitation of the *ex parte* proceedings and trial proceedings, Judge Payne found that no reasonable person would harbor doubts about his impartiality in light of the facts of this particular case.  Doc. 66 at 16.

### b.  Response regarding administrative actions

Regarding the assertions surrounding Judge Payne's personal, off-the-record selection of trial counsel for Mr. Barrett, and his prejudice toward Mr. Barrett's prior attorney, John Echols, illustrated in part by his rulings on budget issues, the district judge rejected the assertion that the manner in which he used the budget hearings to determine the validity of the defense planned strategy effectively disqualified him as "serv[ing] in a governmental employment  capacity  as counsel, adviser or material witness  as those terms are used in 28 U.S.C. § 455((b)(3)."  The judge found that Mr. Echols was allowed to withdraw at his request, and that the judge repeatedly encouraged defense counsel to

submit supplemental budget request if they felt they needed additional funding.  Doc. 66 at 16.

### c. Response regarding the judge's independent factual investigation

The district judge rejected the assertion that he was disqualified because he conducted an independent investigation in the course of denying Petitioner's motion to toll the statute of limitations finding (1) that he had taken judicial notice of facts on the Internet; and, (2) those facts had no bearing on his ultimate legal conclusion.  Doc. 66 at 20.

### 5. *Proceedings on Mr. Barrett's amended § 2255 petition*

On September 25, 2009, before the Government filed any responsive pleading, Mr. Barrett filed an amended § 2255 Motion.  Doc. 70.  On September 29, 2009, Judge Payne entered an Order to Show Cause and Scheduling Conference stating "[t]o the extent Petitioner waited for more than six months following the filing of his voluminous Motion to file an amendment without seeking prior leave of court, this Court finds Petitioner should show cause why this Court should now allow an amendment to his motion."  Doc 74 (Exhibit F).

On October 2, 2009, Petitioner filed a motion challenging the Order to Show Cause, and seeking additional notice of the issues.  Doc. 76 (Exhibit G).  One hour and 44

7

minutes later, the district court summarily denied the motion. Doc. 77 (Minute Order, Exhibit H). On October 5, 2009, Petitioner again challenged the order to appear based on denial of Mr. Barrett's right to notice and to be fully represented. Doc. 78 (Exhibit I). In this motion, Mr. Barrett again sought Judge Payne's recusal. *Ibid*. Thirty-eight minutes later, the motion to reconsider was denied. Doc. 79 (Minute Orders Exhibit J).

A hearing was held on October 6 which began with Judge Payne reading a prepared statement of purportedly deficient actions by Mr. Barrett's counsel, many of which had ever been complained of or brought to counsel's attention. Before hearing any argument, the judge ordered Mr. Barrett to file an amended § 2255 motion. Exhibit K (Tr. 10/6/09 Hr'g).[4] After hearing argument, the Court issued substantially the same order giving Petitioner thirty (30) days to file an amended motion.[5] Doc. 81 (Exhibit L).

## IV. REASONS WHY THE WRIT SHOULD BE GRANTED

The § 2255 Motion pending before Judge Payne presents record evidence and extra-record evidence of judicial misconduct (Claims 1 and 5), judicial interference with the defense (Claims 1, 2, 3, and 5), and prosecutorial misconduct (Claim 5). Docs. 1, 2, & 70 (Exhibit M). The judge's pattern of non-disclosure and factual revision in the underlying criminal case as well as the post-conviction proceedings gives rise to grave concern for Mr. Barrett's ability to get a fair hearing in the district court. There is, at a

---

[4] Petitioner has requested this transcript on an expedited basis. As to this time of writing the district court had not approved Petitioner's request for an expedited transcript. It will be filed as soon as it becomes available.

[5] At petitioner's request, the judge changed his original order of twenty (20) days to file the Amended Petition to thirty (30) days. Exhibit K, L.

minimum, the appearance of bias and prejudice or the lack of fair treatment. Judge Payne should be directed to recuse himself and refrain from presiding further in Mr. Barrett s capital case.

### A. The Applicable Law

#### 1. *Constitutional authority*

The fair trial guarantees of the Due Process Clause of the Fifth Amendment encompass a litigant's right to have "a neutral and detached judge" preside over judicial proceedings. *Ward v. Village of Monroe,* 409 U.S. 57, 62 (1972). This right includes a factfinder without either actual bias or the appearance of bias. *In re Murchison,* 349 U.S. 133, 136 (1959). This constitutional guarantee is sufficiently important that its denial is not subject to the harmless error rule. *See, e.g., Tumey v. Ohio,* 273 U.S. 510 (1927); *Bracy v. Schomig,* 286 F.3d 406, 414 (7th Cir. 2002).

#### 2. *Statutory Authority*

##### a. **28 U.S.C. § 455(a): appearance of bias**

Section 455(a) of the Judicial Code provides that disqualification of a United States judge is warranted when there is actual bias or prejudice, and when "the impartiality of the judge might reasonably be questioned." The goal of § 455(a) is to avoid even the appearance of partiality. *See Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995). "The test is 'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted); *see also United States v. Greenspan,* 26 F.3d 1001,

9

1005 (10th Cir. 1994) (the statute imposes on court "a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality"). "Quite simply and quite universally, recusal [is] required  whenever impartiality might be questioned."  *Liteky v. United States,* 510 U.S. 540, 548 (1994).

### b. 28 U.S.C. § 455(b): actual bias & disqualifying knowledge

The standard for recusal in the first clause of § 455(b)(1) is "whether a reasonable person would be convinced that the judge was biased."  *See Brokaw v. Mercer County,* 235 F 3d 1000, 1025 (7th Cir. 2000).  Recusal under this statute "is required only if actual bias or prejudice is proved by compelling evidence."  *Ibid.*  However, the section is proposed in the disjunctive, requiring disqualification if either bias *or* personal knowledge of disputed facts exists.

The provisions of § 455(b)(1) are applicable to all United States judges and impose the continuing obligation to identify the existence of these grounds for disqualification. *See Liteky,* 510 U.S. at 548. A judge must disqualify himself  "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy," 28 U.S.C. § 455(b)(3), or when he "[i]s to the judge's knowledge likely to be a material witness in the proceeding."  28 U.S.C. § 455(b)(5)(iv).

### 3. *The heightened need for reliability in death penalty cases*

Death penalty cases are significantly different from ordinary felony cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina,* 428 U.S. 280, 305(1976); *see also Gardner v. Florida*, 430 U.S. 349, 357-58 (1977). Because the judge's role under federal law literally gives the power of life and death, recusal issues are treated differently in capital cases. *See, e.g., Bracy v. Schomig,* 286 F.3d 406, 418 (7th Cir. 2002) ("In evaluating [the trial judge's] rulings at the penalty phase of this proceeding, we are again mindful that death is indeed different.")

**B.      Argument**

This petition for writ of mandamus to Judge James H. Payne to recuse himself and refrain from any further participation in the underlying § 2255 proceedings rests on three grounds:  (1) Judge Payne demonstrated bias and prejudice, or at a minimum, the appearance of bias in favor of the Government or against Mr. Barrett when he misrepresented the substance of an *ex parte* communication with prosecutors to the evident prejudice of the defense; (2) Judge Payne is a material witness to events which are at issue in the § 2255 motion that occurred off the record, or, at a minimum, would be required to judge the credibility of witnesses who have given declarations regarding his off-the-record statements; and (3) Judge Payne's active investigation of, and reliance on, extra-judicial information as grounds for rejecting a motion by Petitioner was a disqualifying violation of judicial ethics.  These circumstances individually or

11

collectively disqualify Judge Payne and require him to recuse himself without taking further action in this case. Judge Payne's denial of Mr. Barrett's motions to disqualify him requires this Court to intervene and order recusal in order to ensure the prompt, fair and impartial adjudication of the underlying post-conviction proceedings.

Mr. Barrett has no other adequate remedy that will protect his rights and foster a reliable conclusion to this case.

**1.** ***Any fully informed person would question Judge Payne's impartiality in this matter***

      **a.** **Judge Payne's concealment of his *ex parte* communications with prosecutors and the necessity of adjudicating claims based on those communications constitute grounds for disqualification and recusal**

Claims 1, 2, and 5 of the § 2255 Motion (Docs. 2 & 70), and the exhibits filed in support of them, present evidence that Judge Payne violated Mr. Barrett's constitutional and statutory rights through actions that also violated canons of judicial ethics. Exhibit M at 18. The facts underlying these claims first entered the case during an *ex parte* hearing on September 13, 2005. Judge Payne called the hearing to address the Government's motion for a protective order. Exhibit N (Tr. 9/13/05 Hr'g) at 2. The Government sought to conceal from the defense the identities of seven informant witnesses who were central to the prosecution's case, including Charles "Monk" Sanders, the confidential informant on whose statements the entire case was allegedly set in motion. *Id.* at 7-8; *see also Barrett*, 496 F.3d at 1115.

The transcript indicates, and it was undisputed below, that the *ex parte* communications took place in Judge Payne's chambers, although the location was not expressly made a part of the record.[6] While it may be that Judge Payne believed the *ex parte* conference was necessary for "emergency purposes," ABA Model Rule 2.9, what transpired during the hearing shows Judge Payne saw no emergency, and, in any event, that he permitted the discussion to include matters of substance prejudicial to Mr. Barrett about which he did not inform the defense and to which he gave Mr. Barrett no opportunity to respond.

At the beginning of the hearing, Judge Payne informed the prosecutors that he saw no merit in the written motion in which the Government had relied upon the court's prior orders that Mr. Barrett be restrained with an electric shock belt and that the jury be anonymous. Exhibit N at 3-4. Towards the end of the hearing, after he gave prosecutors an opportunity to present additional factual support for the Government's motion, Judge Payne specifically and repeatedly emphasized that the Government had no evidence of any overt act by any person that would suggest the witnesses were in danger. *Id.* at 20. Because the Government's pleading did not support the need for an *ex parte* hearing, there should never have been one, or at the very least, it should have terminated as soon as it became clear the Government had no evidence to support its alleged fears.

---

[6] At the conclusion of the *ex parte* conference, Judge Payne stated that they would "proceed with jury selection," and "I'll see you downstairs." Exhibit N at 23.

13

During the hearing, Judge Payne "address[ed] substantive matters" beyond the immediate purpose of the Government's motion. Code of Conduct Canon 3(4). First, as set forth in the § 2255 Motion, during the *ex parte* communications, Judge Payne communicated the following information to prosecutors, which was not later divulged to the defense. Judge Payne gave prosecutors the benefit of (1) knowing that the court saw no merit in the motion for a protective order, Exhibit N at 4-5, 7, 13 & 19-20; (2) the court's independent legal research into the application of 18 U.S.C. § 3432 to the case, *id.* at 4-5; (3) statements indicating the court would find merit in a defense request for a continuance, *id.* at 10-11; and (4) notice that the court saw in the prosecutors' *ex parte* communications evidence of a potential violation of Federal Rule of Evidence 404(b), *id.* at 22-23.

Second, during the *ex parte* conference, Judge Payne allowed prosecutors to make representations which were not communicated to the defense before the conclusion of the trial. Judge Payne permitted prosecutors to represent that defense counsel believed the trial had not yet started for purposes of 18 U.S.C. § 3432, *id.* at 7-9. Non-disclosure of this representation to the defense resulted in the issue being reviewed for plain error on appeal. *Barrett*, 496 F.3d at 1116-17. Prosecutors informed Judge Payne that they were aware of a witness who when questioned would not corroborate claims of Monk Sanders. Exhibit N at 14, 17. It was clear during the conference that the prosecutors' strategic goal was to prevent for as long as possible disclosure to the defense of the identities of the seven key witnesses, and that Judge Payne was aware of tactical objective. *Id.* at 7.

Prosecutors also informed Judge Payne, that they were attempting to negotiate with defense counsel an arrangement that would provide the defense with less than full access to the prosecution witnesses. *Ibid.* During the proceeding, Judge Payne appeared to catch one of the prosecutors in a contradiction regarding what had been disclosed to the defense, at which point he permitted the two prosecutors to engage in a discussion off the record, but in his presence. *Id.* at 11.

Following the *ex parte* hearing in Judge Payne's chambers, proceedings resumed in open court with defense counsel present. *Id.* at 25. At the beginning of these proceedings the prosecutor sought guidance from the Judge Payne regarding "where we were when we stopped" the *ex parte* conference. *Id.* at 26. Judge Payne said they had been discussing security issues. *Ibid.* He said, "it sounded like there had been some discussion with defense counsel. And that's about as much as the Court knows." *Ibid.*

Judge Payne failed to disclose (a) the court's view that the Government's motion lacked merit, (b) that the information disclosed to the court would constitute grounds for the defense to seek a continuance, or complain about "ambush" at trial, *id.* at 12, (c) that prosecutors informed him of an impeachment witness, a witness whose identity has been suppressed ever since. This last concealment makes Judge Payne complicit in an ongoing violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

Judge Payne continued to conceal the full extent of his *ex parte* communications with prosecutors after he observed Mr. Barrett's counsel foregoing the pursuit of remedies such as a continuance that Judge Payne anticipated would be needed by the

defense. The record shows that despite his conclusion that the Government's motion lacked merit, Judge Payne withheld adjudication of that motion while prosecutors negotiated with the defense conditions for the disclosure of the witnesses' identities and conditions limiting defense access to the witnesses. On September 14, 2005, Judge Payne asked the parties whether they were continuing to negotiate so that he did not have to rule on the motion. R. 840-41. Lead defense counsel Roger Hilfiger stated that he had no objection to the arrangement, "based on what we talked about yesterday." *Ibid.* The court then stated that this would make a "clear record" and the parties' "announcement. . . resolves everything that is under seal." R. 843. The post-conviction declaration of Mark Henricksen shows the withheld information would have dispelled lead defense counsel's erroneous belief that Judge Payne would not have granted a continuance so that the seven witnesses could be investigated.

Judge Payne's participation in *ex parte* communications that he failed fully to disclose, and that included information that would have changed the actions of defense counsel, are acts of judicial misconduct central to Mr. Barrett's claims. At a minimum, Judge Payne is a witness to the communications between prosecutors and subject to inquiry and disclosure of the same. Similar to the American Bar Association's Model Code of Judicial Conduct ("Model Rules"), the Code of Conduct for United States Judges ("Code of Conduct") provides:

> A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or

consider ex parte communications, or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may:

(a) initiate, permit, or consider ex parte communications as authorized by law;

(b) when circumstances require it, permit ex parte communication for scheduling, administrative or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

Canon 3 Rule 4(a)(b); *Cf.* Model Rules, Canon 2, Rule 2.9.[7] Judge Payne's conduct on September 13, 2005 violated this rule.

Proceeding after the *ex parte* hearing without giving Mr. Barrett notice of the court's intentions or the bases for its (in)action with respect to the Government's motion violated Mr. Barrett's right to due process. *Cf. Lankford v. Idaho*, 500 U.S. 110 (1991). This is not a question of the correctness of a ruling that might be reversed by a higher court, but whether Judge Payne engaged in conduct that could subject him to disciplinary proceedings and public obloquy. Any reasonable person fully informed of these circumstances would doubt that Judge Payne, or any other judge, could impartially adjudicate the propriety of his own conduct. *In re Murchison*, *supra*, 349 U.S. at 136. It would violate Mr. Barrett's right to due process in these proceedings for Judge Payne to

---

[7] Petitioner cited this Rule in his Motion to Disqualify and it is this Rule that Judge Payne addressed in his opinion. For purposes of Judge Payne's disqualification, the Code of Conduct controls but is in all relevant ways effectively the same as the Model Rules.

17

continue to decide matters in this case. *Aetna Life Ins. v. Lavoie*, 475 U.S. 813, 825 (1986).

> **b.** **Judge Payne's administrative actions and the necessity of adjudicating claims involving those decisions constitute grounds for disqualification and recusal**

A judge is required to recuse himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). Several claims in Mr. Barrett's Motion to Vacate raise constitutional and statutory violations stemming in whole or in part from decisions Judge Payne made in an administrative capacity under the Criminal Justice Act. Judge Payne's prior administrative decisions express opinions prejudging the merits of the relevant claims.

Claim 1 asserts in relevant part that Judge Payne's administrative decisions and actions denied Mr. Barrett full access to qualified counsel and to investigative and expert assistance, and that his conduct encroached upon the constitutionally and statutorily protected independence of defense counsel by creating a disincentive for counsel to pursue such assistance. Claim 2 asserts in relevant part that Mr. Barrett's trial counsel were ineffective in various ways including lack of preparation and a failure to secure expert and investigative assistance. Claim 3 asserts in relevant part that Mr. Barrett was denied his constitutional and statutory right to expert and investigative assistance due to

the budgeting decisions Judge Payne made prior to trial. *See* Doc. 70 and related exhibits. As regards the independence of defense counsel, and the appointment of less qualified counsel, the claims are supported by declarations of Federal Defenders regarding Judge Payne's off-the-record statements as to why he rejected the defenders' recommendations for more qualified counsel and personally selected another attorney.

The opinions of Judge Payne expressed in the course of administering funds under the Criminal Justice Act cannot be separated from the issues that must be decided in Mr. Barrett's claims. For example, in Claims 2 and 3 Mr. Barrett alleges the outcome of the trial is unreliable because his trial counsel unreasonably failed to challenge the "expert" testimony of Iris Dalley and her "reconstruction" of the crime scene. Judge Payne denied Mr. Barrett's counsel access to funds necessary to have a crime scene reconstruction expert assist in challenging Dalley's testimony. Although Judge Payne would permit counsel to consult with an expert on a limited basis, he denied counsel's request for funds to have a defense expert travel to Oklahoma where he could observe the Government's expert's testimony and advise counsel about its shortcomings. In denying these funds, Judge Payne advised Mr. Barrett's counsel that he had never permitted a crime scene reconstruction expert to testify. CR 04-115 Doc. 97 at 3. (Exhibit O). He later permitted the Government to present such testimony. R. 3154-3484.

In the course of his administrative duties Judge Payne expressed distrust of John Echols, Mr. Barrett's former trial counsel, whose requests for investigative and expert assistance are now at issue. In Claims 1, 2, and 3, Mr. Barrett asserts that Mr. Echols

made reasonable requests for expert assistance and other resources. Judge Payne's responses to those requests included implicit and explicit attacks on Mr. Echols. Judge Payne's letter to Mr. Echols dated February 22, 2005, implies that Mr. Echols was seeking to enrich himself through his representation of Mr. Barrett. Doc. 1, Exh. 65 to Mot. to Vacate. Exhibit P. Judge Payne's order in response to Mr. Echols motion to withdraw accuses Mr. Echols of violating court orders requiring detailed descriptions of tasks for budget requests. CR 04-115 Doc 128 at 4. Exhibit Q. Judge Payne did not impose the same requirements on Roger Hilfiger, whose representation of Mr. Barrett is the subject of Claim 2. Judge Payne personally nominated Mr. Hilfiger to represent Mr. Barrett over the recommendations of two Federal Defenders who recommended another attorney. Exhibits R, S, & U (Doc. 70, Exhibits 67 (O'Connell), 34 (Echols), and 54 (Otto).

Mr. Barrett alleges, *inter alia*, that Mr. Hilfiger unreasonably failed to secure the assistance of experts and other forms of evidence. Mr. Barrett's pleadings demonstrate prejudice in part through the opinions of witnesses whose expertise parallels that of the experts Mr. Echols tried to retain. Judge Payne's prior rulings on Mr. Echols's budget requests create a source of bias. Judge Payne, through his budget rulings, communicated to trial counsel that he believed Mr. Echols's requests were unreasonable. In that respect Judge Payne has prejudged, and expressed an opinion on issues that arise in Mr. Barrett's claims.

20

Under analogous circumstances where a relationship of distrust or animosity developed between counsel and the court, the Supreme Court has required judges to recuse themselves. In *Taylor v. Hayes*, 418 U.S. 488, 503 (1974), the Court concluded that the case of an attorney accused of contempt had to be heard by a different judge than the one who initially brought the charges because the record showed the judge had "an unfavorable personal attitude toward petitioner, his ability, and his motives." 418 U.S. at 501. Similarly, in *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), the Court held that the trial judge should have recused himself and permitted another judge to decide the issue of contempt because, during the course of the dispute between an attorney charged with contempt and the court, "marked personal feelings were present on both sides." 400 U.S. at 464. Judge Payne's statements on the record reflect both marked dissatisfaction with Mr. Echols as an attorney and marked personal regard for Mr. Hilfiger. Because both concerns are at issue in the §2255 proceedings, Judge Payne suffers, at the very least, the appearance of bias and prejudice.

### 2. Recusal is required under 28 U.S.C. § 455(b) due to Judge Payne's status as a witness

A judge is disqualified from proceedings and must recuse himself where the judge "is to the judge's knowledge likely to be a material witness of the proceeding," 28 U.S.C. § 455(b)(5)(iv), or where the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Claim 1 of Mr. Barrett's Motion to Vacate asserts in relevant part that Judge Payne pursued his own agenda rather than the

standards set forth in the Judicial Conference's *Guidelines for the Administration of the Criminal Justice Act and Related Statutes* ("CJA Guidelines") when choosing counsel to appoint to represent Mr. Barrett. Claims 1, 2, and 3 also assert in relevant part that Judge Payne's selection of Roger Hilfiger to represent Mr. Barrett, and Judge Payne's rejection of John Echols's resourceful approach to the case in favor of Mr. Hilfiger's less expensive approach to the case was prejudicial to Mr. Barrett.

The grounds upon which Judge Payne rejected the recommendations of two Federal Defenders in order to appoint Mr. Hilfiger, and some of the grounds upon which Judge Payne rejected Mr. Echols's requests for funds, are not part of the trial record. Mr. Barrett relies upon the declarations of witnesses to Judge Payne's statements including those of former Federal Defender Paul Brunton, current Federal Defenders Susan Otto and Julia O'Connell, and John Echols, the latter three of whom have submitted declarations in the post-conviction case. Exhibits U, R, S. To the extent the Government disputes those statements, Judge Payne is likely to be a material witness and his personal knowledge – gained in an administrative rather than judicial capacity – is likely to be in dispute. At a minimum, Judge Payne cannot, without the appearance of impropriety, be called upon to adjudicate the veracity or significance of witness accounts of his own extra-record statements.

Title 18 U.S.C. § 3005 provides that in a capital case the court shall "assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases . . .. In assigning counsel under this section, the court shall consider the recommendation of the

22

Federal Public Defender organization." Pursuant to CJA Guidelines, the Federal Defender and the court should take into account "the facts and circumstances of the case to determine the qualifications which may be required to provide effective representation." CJA Guidelines ¶ 6.01 (B)(1).  Courts are encouraged to appoint counsel who "are well qualified, by virtue of their prior defense experience, training and commitment, to serve as counsel in this highly specialized and demanding litigation." *Id.*

In this case, Judge Payne expressed a desire to appoint the Federal Defender to represent Mr. Barrett in his federal trial proceedings. When the Federal Defender's office received notice that Judge Payne intended to appoint it to represent Mr. Barrett, the office informed Judge Payne that it could not adequately represent Mr. Barrett because of its limited resources and current involvement in a death penalty case.  Exhibit R.  Two Federal Defenders and an Assistant Federal Defender recommended that Judge Payne appoint John D. Echols – who effectively represented Mr. Barrett in his two state court trials – and Robert Nigh – a Tulsa attorney with significant federal death penalty experience.  *Id.*; Exhibit S (Decl. John D. Echols).  The Federal Defender Office made this recommendation because it believed that these two attorneys were qualified to try the case effectively as an alternative to the Federal Public Defender.  Exhibit S.

Judge Payne initially appointed John Echols to the case.  In appointing Echols, Judge Payne stated that "he wanted the case tried quickly and that this should be no problem because [Echols] had handled Kenny's state case."  Exhibit S.  Judge Payne, however, declined to appoint Robert Nigh and instead appointed Roger Hilfiger, the

23

former United States Attorney for the Eastern District of Oklahoma. Exhibit S, R.[8] Judge

Payne's rationale for this appointment was not based on factors recognized by the Judicial

Conference or national indigent defense organizations as indicative of an attorney's

qualifications to provide effective representation. Rather, Judge Payne stated that it

seemed that the federal death penalty cases that were being filed in Oklahoma were being

prosecuted in the Eastern District and because of that, "if counsel from the Eastern

District were appointed, that lawyer or lawyers could then take other death penalty cases

filed in the Eastern District in the future." Exhibit S. Judge Payne thus admitted that he

intended to appoint less qualified counsel in Mr. Barrett's case as a means of giving local

attorneys experience so that a local panel could be formed to provide representation in

capital cases. Exhibits S, R. Following these appointments, Judge Payne made clear in

orders, a letter to defense counsel, and in hearings, that he wanted to minimize the funds

expended on Mr. Barrett's defense.

Judge Payne's personal selection of Mr. Hilfiger for this and future cases,

combined with his disputes with Mr. Echols over resources, which resulted in Mr.

Hilfiger being elevated to lead counsel and receiving an increase in pay, created a conflict

between the court's interests, counsel's interests, and Mr. Barrett's interests in a vigorous,

---

[8] In its minute order, the Court first stated that the substitution of Mr. Hilfiger for Mr. Nigh was by agreement with the Federal Defender. When the Federal Defender wrote to Judge Payne asking that the Court's order reflect the Federal Defender's objection to the substitution, Magistrate Judge Shreder entered an amended minute order specifying that Mr. Echols had been appointed at the request of the Federal Defender and Mr. Hilfiger had been appointed at the direction of the Court. (Decl. John D. Echols, Filed as Exh. 34 to Mot. to Vacate).

24

independent defense. *See generally Woods v. Georgia,* 450 U.S. 261 (1981).

The information Judge Payne obtained and the opinions he expressed regarding the appointment, provisioning, and performance of Mr. Barrett's counsel occurred when Judge Payne was acting in an administrative rather than a judicial capacity. *United States v. Gonzalez*, 150 F.3d 1246, 1255 (10th Cir. 1998).

### 3. Judge Payne's independent investigation of facts underlying the denial of Mr. Barrett's motion for tolling constitutes grounds for disqualification and recusal

"A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." ABA Model Code of Judicial Conduct, Canon 2, Rule 2.9(C). The ABA Model Rules appropriately place the prohibition on independent judicial investigation within the context of other *ex parte* communications due to the judge collecting "evidence" from third-party sources without providing notice or an opportunity to be heard to the parties that may be affected by the judge's investigation.[9] "The prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic." *Id.*, commentary.

Though not expressly found in the Code of Conduct for United States Judges, a trial judge is prohibited from independent investigation by virtue of the prohibition against *ex parte* contact and the requirement that "every person who has a legal interest in

---

[9] *See* Elizabeth G. Thornburg, *The Curious Appellate Judge: Ethical Limits on Independent Research*, 28 Rev. Litig. 131 (Fall 2008).

a proceeding, and that person's lawyer," should be accorded "the full right to be heard according to law." Code of Conduct Canon 3 Rule 4. Federal courts have held that where a judge conducts an independent investigation or confers with witnesses outside of counsel's presence, § 455(a) requires recusal. *See In re United States*, 441 F.3d 44, 66-68 (1st Cir.2006)(recusal under 455 (a) required where judge stays pending criminal matter to conduct investigation of potential misconduct concerning the grand jury); *In re Edgar*, 93 F. 3d 256, 258-60 (7th Cir. 1996)(ex parte meeting with experts who had come to favor one party requires recusal under section 455(a)).

On February 9, 2009, Mr. Barrett filed a motion to toll the time limits imposed in 28 U.S.C. § 2255. CR-04-115, Doc 382. Exhibit C. Mr. Barrett's motion was based primarily on the inability of his appointed counsel due to a medical condition to perform the work necessary to complete the motion. *Ibid.* The Government responded that "Defendant's counsel cites unique and extraordinary circumstances which justify the time relief requested herein." CR-04-115, Doc 390. Exhibit D. Although Mr. Barrett tentatively reported that the Government opposed the motion, in its response, the Government withdrew its initial opposition to granting Mr. Barrett any relief, and conceded that the circumstances presented in the motion satisfied the higher courts' criteria for tolling. *Ibid.*

The court's order filed February 27, 2009, denied Mr. Barrett's motion *in toto*. CR-04-115, Doc 397 at 1-2. Exhibit E. The order shows that Judge Payne searched the Web site for the Federal Defender Office for the Eastern District of California ("FDO") in

order to gather information he would use to adjudicate the motion. Exhibit E at 1. Judge Payne expressly and primarily relied upon the Web site's list of attorneys working both in the Sacramento and Fresno branches of the FDO to "find[] the Defendant has failed to establish that counsel can not timely file a completed motion to vacate within the current statute of limitations period." *Id.* at 3.

The record shows Judge Payne gave neither party notice that he was conducting his own independent investigation. The record also shows Judge Payne gave Mr. Barrett no opportunity to be heard regarding the "evidence" he believed he had developed as a basis for denying the motion. The record shows Judge Payne gave no consideration to whether any of the attorneys listed on the FDO Web site were qualified to represent Mr. Barrett as required by 18 U.S.C. § 3599.

Judge Payne's February 27 Order misstated the circumstances under which Assistant Federal Defender Tivon Schardl was appointed to represent Mr. Barrett, and did so in such a way as to make the findings of his independent investigation seem more pertinent than could be justified under the true circumstances. As Judge Payne stated, "this Court appointed David B. Autry as lead counsel and the Federal Defender for the Eastern District of California, Capital Habeas Unit as co-counsel." Exhibit E at 1. The Court appointed the Capital Habeas Unit, and more specifically appointed "David B. Autry and Assistant Federal Public Defender, Eastern District of California Tivon Schardl" as counsel for Mr. Barrett.

Judge Payne specifically relied upon the FDO Web site's identification of 37 attorneys at branches in Sacramento and Fresno, Order at 1-2, although he knew or reasonably should have known that only a fraction of those attorneys worked in the Capital Habeas Unit ("CHU") in Sacramento. Indeed, the Web site specifies that the CHU is in Sacramento. In response to a request, Mr. Schardl wrote Federal Defender Julia O'Connell on March 26, 2008 that "the Federal Defender for the Eastern District of California, has authorized me to inform you that our *Capital Habeas Unit* is able to represent Mr. Barrett." Letter from Tivon Schardl to Julia O'Connell dated 3/26/2008 (emphasis added). Exhibit T. The letter specifies Mr. Schardl's qualifications for appointment. Following the submission of that letter, and with no other contact between Mr. Schardl and the court, Judge Payne specifically substituted David Autry and Mr. Schardl as counsel for Mr. Barrett. (Minute Order filed 4/3/2008 (Doc. 374) in Case No. CR-04-115-JHP).

Judge Payne cited as the second ground for denying Mr. Barrett relief that "according to the Motion, the Government opposes tolling the statute of limitations." Exhibit E at 2. Judge Payne omitted the fact that *after* Mr. Barrett filed his motion the Government filed a response in which it did not oppose relief. Exhibit D at 1. Then the judge stated "the Government's response contain[ing] numerous citations to cases in which the courts have found equitable tolling was not appropriate" but omitted the Government's statement that the circumstances presented in Mr. Barrett's motion fit within cases where the courts found tolling *was* appropriate. Exhibit D at 1. Together

28

Judge Payne's independent search for a factual basis upon which to deny the motion and his selective references to the motion and response – including only things negative to Mr. Barrett and omitting the statement of both parties' counsel in his favor – reflect a bias, or the appearance of bias, against Mr. Barrett's pursuit of relief.

Nor is the appearance of impropriety overcome by Judge Payne's finding that he did not rely on that internet search of which he took "judicial notice." *See* Doc. 66 at 20-21. The Order makes clear that Judge Payne was relying significantly on his independent research. Exhibit E at 1-2. The extra-judicial search is identified as the "first" reason for the denial of the motion for equitable tolling. *Id.* There is nothing in the Order which indicates at the time that the judge was taking "judicial notice" of the information. CR 04-115, Doc. 397 at 1-2. In fact, there would be no reason for Judge Payne to take "judicial notice" of facts unnecessary to the resolution of the motion. *See generally*, *In re Corey*, --F.3d– , 2009 WL 3112413 (10th Cir. Sept.30, 2009). Judicial notice of facts "is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as 'a substitute for the conventional method of taking evidence to establish facts. '" *York v. AT & T,* 95 F.3d 948, 958 (10th Cir.1996) (quoting *Grand Opera Co. v. Twentieth Century-Fox Film Corp.,* 235 F.2d 303, 307 (7th Cir.1956).

If Judge Payne believed it appropriate to alleviate the parties' evidentiary duties, notice to the parties to that effect was required. None was given. The judge was effectively an investigator for the government. *See Johnson v. Carroll,* 369 F.3d 253, 260 (3d Cir.2004) (prohibition against a judge adjudicating a case where he has become an

investigator for the government).  His willingness to take "judicial notice" of facts to support a denial of a motion unoppopsed by the  Government corroborates Mr. Barrett's concerns in the appearance of bias to the government and prejudice toward petitioner.

## V.      REQUEST FOR EVIDENTIARY HEARING

Judge Payne's Order denying the Motion to Disqualify makes clear his denial was based in significant part by personal recollection, not a part of the record and that he is a material witness to the factual allegations contained in the Motion.  At a minimum, the Motion to Disqualify Judge Payne should have been assigned to another judge for an evidentiary hearing.  If a writ of mandamus is not issued on the pleadings herein, due process requires at a minimum that the Motion to Recuse or Disqualify be vacated and the matter remanded for an evidentiary hearing before a judge other than Judge Payne. *Murchu v. United States*, 926 F. 2d 50, 57 (1st Cir. 1991).

## VI.    RELIEF REQUESTED

For the reasons stated above, an Order granting the petition for writ of mandamus should be entered and a writ of mandamus ordering Judge Payne to recuse himself and refrain from any other judicial acts should be entered.  All of the substantive orders entered by Judge Payne, including his most recent Order to Show Cause should be vacated and a new judge assigned to preside over Mr. Barrett's § 2255 proceedings.

Strictly in the alternative, the question of recusal should be remanded for an evidentiary hearing before a judge other than Judge Payne.

DATED:      October 13, 2009

Respectfully submitted,

/s/ David B. Autry
DAVID B. AUTRY, OBA# 11600
Attorney at law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone: 405-521-9600

DANIEL J. BRODERICK
Federal Defender

/s/ Tivon Schardl
TIVON SCHARDL, Fla. Bar No. 73016
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: 916-498-6666

Attorneys for Movant
KENNETH EUGENE BARRETT

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October 2009, I caused the foregoing

instrument to be served upon the following persons by placing copies of the same in the

U.S. Mails, first class, postage prepaid, addressed to:

Hon. James H. Payne
United District Courthouse
 Eastern District of Oklahoma
101 N. 5th Street
P.O. Box 607
Muskogee, OK  74402-0607

Christopher J. Wilson

31

AUSA
1200 W. Okmulgee Street
Muskogee, OK 74401

Jeffrey B. Kahan
U.S. Department of Justice
1331 F Street, N.W.,
Washington, D.C. 20530.

/s/ Tivon Schardl