# IN THE UNITED STATES COURT OF APPEALS OF THE TENTH CIRCUIT

## CASE NO. 09-7096

_____

### *In Re*

### KENNETH EUGENE BARRETT, *Movant*

[DEATH PENALTY CASE]

_____

### PETITION FOR WRIT OF MANDAMUS

### TO UNITED STATES DISTRICT JUDGE
### JAMES H. PAYNE

_____

### NOTICE OF FILING EXHIBIT N

Kenneth Eugene Barrett, by and through his undersigned counsel, pursuant to this Court's order filed October 22, 2009, hereby gives notice of filing a complete Exhibit N to his Petition for Writ of Mandamus. This exhibit should be substituted for the exhibit previously filed which was missing pages. Petitioner's counsel apologizes for any inconvenience caused by the omitted pages.

////

////

////

////

////

1

DATED:     October 22, 2009

Respectfully submitted,

DAVID B. AUTRY, OBA# 11600
Attorney at law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone: 405-521-9600

DANIEL J. BRODERICK
Federal Defender

/s/ Tivon Schardl
TIVON SCHARDL, Fla. Bar No. 73016
Attorney
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: 916-498-6666

Attorneys for Petitioner
KENNETH EUGENE BARRETT

**CERTIFICATE OF SERVICE**

This will certify that, on today's date, this motion was served upon the United States by filing via ECF.

<span style="margin-left:40%">/s/ Tivon Schardl</span>
<span style="margin-left:40%">TIVON SCHARDL</span>

DATED:     October 22, 2009

IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

## CASE NO. 09-7096

*In Re*

KENNETH EUGENE BARRETT, *Movant*

[DEATH PENALTY CASE]

PETITION FOR WRIT OF MANDAMUS

TO UNITED STATES DISTRICT JUDGE
JAMES H. PAYNE

EXHIBIT N

Transcript of Hearing on Government's Motion
For Order Delaying The Production Of Witness
Names And Request For Protective Order

September 13, 2005

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,               )
                    Plaintiff,          )
                                        )
VS.                                     )          NO. CR-04-115-P
                                        )
KENNETH EUGENE BARRETT,                 )
                    Defendant.          )

*     *     *

TRANSCRIPT OF HEARING ON GOVERNMENT'S MOTION
FOR ORDER DELAYING THE PRODUCTION OF WITNESS
NAMES AND REQUEST FOR PROTECTIVE ORDER

BEFORE THE HONORABLE JAMES H. PAYNE
UNITED STATES DISTRICT JUDGE

SEPTEMBER 13, 2005

VOLUME I OF II
*     *     *

**A P P E A R A N C E S:**

FOR THE PLAINTIFF:          MR. SHELDON J. SPERLING
                            United States Attorney
                            MR. D. MICHAEL LITTLEFIELD
                            Assistant United States Attorney
                            1200 West Okmulgee Street
                            Muskogee, Oklahoma 74401

COURT REPORTER:             KARLA S. McWHORTER
                            UNITED STATES COURT REPORTER
                            P. O. Box 2251
                            Muskogee, Oklahoma 74402

KEB100589

<u>COURT IN SESSION</u>

THE COURT: This is case number CR-04-115, U.S.A. versus Kenneth Eugene Barrett. This matter comes on for the government's motion for order delaying the production of witness names and request for protective order.

This hearing is sealed pursuant to the request, government's request.

Appearances for the government, for the record, please.

MR. SPERLING: Shelly Sperling and Mike Littlefield, Your Honor.

THE COURT: I set this matter rather quickly. I was not fully aware of the government's motion, the content of the government's motion until late yesterday after we finished the day of jury selection or the death penalty qualification phase of the jury selection is probably a more accurate way to define it, in case number CR-04-115.

On reflection last evening and after some research, the Court has some concerns that I thought should be dealt with as soon as reasonably possible to perhaps -- and perhaps the government can address concerns that the Court has.

Since we are -- since we are where we are, I'll not

KEB100590

dwell on it. I am curious, but I don't want a long lengthy answer because of the time restraints that we have this morning, as to why this motion was not filed much, much earlier. We have had at least two, maybe three pretrials. Every time the Court has inquired about the status of discovery, I have been told it's moving along fine without problem. This issue is a -- my research suggests it is of utmost importance for several reasons. One, as pointed out by the government's motion, they are concerned about the safety of potential witnesses. So that we don't waste time -- and I have read the motions and I think it's important that the government understand that the anonymous jury selection process that the Court is going through does not support necessarily the action that the government suggests. The government suggests in the brief that the Court has determined that there is a danger -- that perhaps the defendant is dangerous and suggests that that is support for this motion. So you understand, my primary concern with the anonymous jury was one that has to do with publicity. I was concerned about the public being aware of who the jurors were and because this case has in the past gotten some attention in the press, that that was an effort on the part of the Court to perhaps protect those jurors from the public contacting them. I had no direct information that they

KEB100591

would necessarily be in any danger. The reference to the stun belt was a request on the part of the Marshal and a hearing was conducted earlier on the security issues that were raised by the Marshal. I had no further information that the defendant had a degree of dangerousness outside of the courthouse and outside of the transportation issues, not that the stun belt assists with transportation, but once in the building the Marshal made that request and we had that hearing, that you are aware of. As far as there being -- as far as the government drawing from those two orders on the part of the Court, that is dealing with the anonymous jury and the stun belt use by the Marshal with the defendant in transferring him to and from the holding cell on the first floor to the courtroom -- those in my mind are not connected to the government's motion, the motion that is before the Court now.

This motion was filed very late on Friday and came to my attention just minutes before we started the hearing yesterday. Of course, I think it is -- I have digested it now and I -- and I am concerned. The first thing I'm interested in the government addressing is when does the trial start. What is the -- did we start the trial yesterday? Does the trial start on the 26th? That's the reason I'm here. My research suggests there is a

KEB100592

possibility the trial started yesterday. I am further concerned -- and I'll allow the government to speak to this. The way the record appears to me is the government has filed a list of witnesses on Friday, I assumed complying with the three day requirement indicating that the government thinks perhaps the trial started yesterday.

Now, if I am overly concerned about something the government has a clear cut answer for, I'll be relieved. I'm concerned, at the very least. about the government's requirements to put on a preponderance of the evidence to demonstrate the concerns outlined in the motion for order delaying the production of witness names. I would advise the government that it's -- the Court has some concerns as to why this did not happen at a time when it could have been addressed more leisurely and comfortably. We are now here a few minutes before nine with the jurors coming in with only a few minutes to address this issue. So, I'm interested, first, in knowing from the government when does the trial start. I'm not so interested in excuses why it hasn't been done before, although that troubles me that we couldn't -- because if we had only had one pretrial, I would understand it, but I have had status conferences and pretrials. You could have filed this under seal weeks ago. As I say, I'm -- I don't want to waste time about what we could have done.

KEB100593

I want to address where you think we are now and what evidence you have to support the delay in producing the names of these witnesses.

MR. SPERLING: Judge, the defense has been made aware of the existence of civilian witnesses in a number of ways. Mike Littlefield has so informed them in a timely manner. We have also told them in two ways. One is we gave them a witness list and that witness list had these names deleted from the witness list. I also told Bret Smith last week that we were going to delete these and seek a request of the Court that they be maintained or remained sealed until a reasonable period of time before their actual testimony when the trial began. So it's not as if we have sneaked this up on them.

I appreciate the Court's concern that this matter could have been -- perhaps could have been raised earlier, but it was raised, I believe, in a timely manner, first by motion and then by notice to defense counsel to tell them of the existence of this circumstance. In fact, I told them actually the bases for it and I said we don't want -- in substance we don't want to find bodies. We have cause for concern. I also candidly told defense counsel at the same time that I would understand that they would want to be able to run the witnesses by their client to ask what their client knows about them. That's the

FORM C-100 · LASER REPORTERS PAPER & MFG. CO. 800-626-6313

KEB100594

reason that we both provided them a witness list as is required by statute and then provided this information to the Court and informed defense counsel of what we were doing at the same time. I say this not by way of a solution, but the Court may be aware that we had a computer crash that began, I believe, mid-week last week. That doesn't explain the time prior to that, if we should have done it prior to that time, but our computers have been down. In fact, we are not back up fully.

THE COURT: What my concern is, is that -- and I -- you know, it's a little reassuring that there has been some discussion with defense counsel about the general subject. However, my concern is just -- I'll be upfront with you. My concern is if you are -- I don't know what evidence you intend to bring to the Court to show the preponderance of the evidence. If you fail and the trial started yesterday, there could be a problem with those witnesses. Now, that's not my concern, it's just one of the possiblities that puts the matter in a time frame that causes me a great deal of concern.

MR. SPERLING: We and defense counsel have been operating under the inference that the trial begins on or after the 26th. In our discussion with them, in our discussions about the witness list and doing -- in fact, that was one of the things that I brought out, is that

KEB100595

we are, in an abundance of caution, going to bring this up to the Court now so that it can be treated before the trial begins on the 26th. I know that trial is used variously.

THE COURT: Well, you understand my curiosity about that is you produced the witnesses three days before -- as far as I'm concerned, at least -- it's either a coincidence or you had some concern about Monday being the trial day.

MR. SPERLING: Well, we did it in an abundance of caution and that's why we presented it to the Court as well. I believe that we are in compliance with the statute. I believe -- we have also been operating, Your Honor, under the assumption that the trial doesn't begin until the jury is actually sworn.

THE COURT: Well, that --

MR. SPERLING: Although proceedings are beginning -- and I know that there is terminology, even in the Court's instructions perhaps that could --

THE COURT: There is even a little case law out there that is --

MR. SPERLING: Yes.

THE COURT: -- perhaps you are acquainted with that, which causes me some concern.

Okay. You may proceed.

KEB100596

MR. SPERLING: But in any event, we presented both the witness lists, as well as the witnesses that we wished delayed in a timely manner. Now, it may not be as timely and -- and I can't say that this could not have been done in some respects earlier. I must admit that some of the witnesses were relatively late breaking and, in fact, have been the product of a very recent interview by counsel, but at the same time I think that we are in compliance by virtue of having filed the list, having informed defense counsel, having given the Court the remaining items and --

THE COURT: You have informed defense counsel orally?

MR. SPERLING: Yes.

MR. LITTLEFIELD: Can I address this, Judge?

THE COURT: You may.

MR. LITTLEFIELD: I have informed defense counsel of the essence of the testimony of the witnesses, not just that there are witnesses, but they have been advised that -- and a number of these people -- they are all associates of Mr. Barrett's, associates or family. A number of those individuals were, they advised, at or about Mr. Barrett's residence during the months leading up to this particular incident and they have advised and we expect them to testify that Mr. Barrett knew there

KEB100597

was an arrest warrant outstanding, he expected law enforcement to come to his residence at some point in time and advised that -- words to the effect of I'm going to shoot when they come. And the defense has been told that that is the essence of what they are going to say.

THE COURT: Of these witnesses you are attempting to protect?

MR. LITTLEFIELD: Yes, Your Honor.

THE COURT: Well, now, you understand my concern is -- you know, I -- I have full confidence that you have done exactly what you have said you have done. However, if what -- there is no record, other than what we are making here under seal now, that this has transpired. I mean, the Court is not aware of it. What the comfort level of the defense with this process is is of great concern to me because I could foresee the term surprise being echoed through this case. Now, what you are telling me now starts to make me feel somewhat better about it, but defense counsel has an obligation to defend their client within every parameter of the law. Whether they think it's sufficient notice of what is -- of what is happening, I'm not sure.

MR. LITTLEFIELD: Mr. Smith specifically -- and, Judge, I'm an officer of the Court and I'm not going to tell Your Honor anything, you know, that hasn't existed.

These defense attorneys are honorable as well. I think that if the Court at some point in time asks them, have they been apprised of information regarding what we anticipate these people will say, I think they will --

THE COURT: Haven't you in effect disclosed to counsel then essentially who they are by telling them what the testimony is?

MR. LITTLEFIELD: No, no, because --

MR. SPERLING: Well, what the testimony is --

MR. LITTLEFIELD: We have told them what the testimony --

THE COURT: Once you have told them what the testimony is, if they talk with their client about it, isn't he going to be able to determine roughly who we are talking about?

MR. LITTLEFIELD: I don't believe so.

MR. SPERLING: Mike, hold on. Excuse me just a second.

(OFF THE RECORD DISCUSSION BETWEEN
MR. SPERLING AND MR. LITTLEFIELD)

MR. LITTLEFIELD: If -- Your Honor asks about does that notice them, the defense, as to who it is and my response would be yes and no. Yes, because the defense could go back through his recollection of who he might have said that to and have an access to the names. No,

KEB100599

because it is my belief that the defendant said that to many, many more people than those that we have found. I have learned of one person, for example, who -- through witnesses, who would have been a participant in a conversation with Mr. Barrett in which statements of this nature would have been made. I talked to that person. That person refused to acknowledge it, I think in large measure because of the fear.

THE COURT: Well, I -- of course, the notice of who the witnesses are -- the term ambush you are familiar with and I guess what concerns me is when these names are revealed with three days notice that we are going to have a request for a continuance. It would be difficult -- if they are as important to the government's case as you say they may be, it looks like we are setting this case up for a long continuance.

(PAUSE)

(OFF THE RECORD DISCUSSION BETWEEN
MR. SPERLING AND MR. LITTLEFIELD)

MR. SPERLING: What we propose, particularly with regard to Witness Turman, Your Honor, we have grave concerns about him and --

THE COURT: About who?

MR. SPERLING: Witness Turman, who has been identified, I believe, in our pleadings. What we propose

KEB100600

-- and I'm not trying to parlay as the primary support for this motion the notion that there has been a stun belt or that the Court has exercised caution with regard to juror identification. I stated those because I think they are relevant features of this case and I think that if -- from our perspective, although perhaps not from the Court's, they are concerns which support those items and also support the principle that we are advancing in this cause.

THE COURT: I would simply say that, you know, probably any capital case where I was the presiding judge a stun belt would be used just because of the nature of the potential punishment. It just seems that it's a common -- almost a common sense call under those circumstances. That's what I wanted to convey to you this morning. So what I'm interested in hearing is what is the support for the -- what evidence am I going to be furnished to demonstrate that these people are in danger?

MR. SPERLING: I think that our brief with regard to the defendant being reasonably believed to be dangerous, that if convicted he faces substantial sentences, that there may well be media coverage...I need not belabor that. I want to focus on, C, exactly why the Court should delay the production of certain witnesses in this case. We have identified each of these witnesses,

KEB100601

Your Honor. Two of them are in prison; one in federal, one in state. Others live in and around Sequoyah County, which is the home county of the defendant. It is -- there is common knowledge, Your Honor, that guns and drugs go hand in hand and particularly in Sequoyah County, methamphetamine distributors are often armed. The defendant is a hero to certain drug traffickers, as at Doss Gann's residence. He was a federal defendant and was prosecuted here. In fact, Mr. Littlefield was the prosecutor in that case and Doss had a picture of the defendant on the wall with the inscription hero after the time of this incident, this shooting. Randy Turman and Brandie Price have explicitly expressed concern about intimidation, threats, and safety of family members. The confidential informant that has been identified in our pleading, Your Honor, stated such. He was at the house of defendant's associate and overheard the defendant speaking on the phone saying we have got to find out who the C.I. is and take care of him. Mr. Littlefield has spoken directly with that confidential informant, who is identified in our pleading by name.

THE COURT: What is the time frame of that?

MR. LITTLEFIELD: It was after the arrest, while Mr. Barrett was -- and I don't know --

THE COURT: In '99?

FORM C-100 · LASER REPORTERS PAPER & MFG. CO. 800-626-6313

MR. LITTLEFIELD: It would have been in the time frame of '99, early 2000 is my best guess. I didn't ask specifically because I -- but the informant was at someone's residence, a phone call was made, the informant was next to the person who was the recipient of the phone call, recognized Mr. Barrett's voice over the telephone and heard Mr. Barrett tell this associate that we need to find out who the confidential informant is and take care of him.

THE COURT: Okay. You may proceed.

MR. SPERLING: All right. I think the pleading speaks for itself with regard to Cindy Crawford and Randy Turman, but we would point out in particular that Randy Turman has explicitly stated to counsel that he seriously fears Jerry Graham, who is a very dangerous man, recently released from prison and believed involved in Sequoyah County drug activity. This is according to District Attorney Investigator Clint Johnson. Jerry Graham is a neighbor of Randy Turman's and several law enforcement officers, as we noted in our pleading, who are familiar with Jerry Graham advised that he is believed to have killed in the past.

There is another matter, another man by the name of Randy Weaver. We have set forth the substance of what we expect that he will testify to. Brandie Price is also an

KEB100603

associate of the defendant, whom we have identified in our pleading as saying that as an associate of the defendant that the defendant told her the cops were going to come, bullets would fly and she should either grab a gun or stay low and that the defendant intended to kill as many of them as he could. She is often in Sequoyah County, although her marital relationship is on and off with a husband and when it's on they live in Van Buren or Fort Smith. She is often then with her mother or grandmother in Sequoyah County and is the object of substantial concern. And then there is Charles Sanders. He is the confidential informant. Early in this proceeding there were allegations by predecessor defense counsel that the C.I. was really fiction. He is not, he is real. We have identified him in this pleading. He knew that the defendant cooked meth. He had been there, smelled the odor of meth at the defendant's residence, had seen cooking items at the defendant's residence, knew that the defendant cooked crank at his residence at a time approximate to the charged murder, and this informant, Mr. Sanders, said that the defendant expected cops to come and said he was going to kill the first one through the door. There was other -- there were other allegations about interaction between the informant and the defendant and sometime after the

FORM C-100 · LASER REPORTERS PAPER & MFG. CO. 800-626-6313

defendant's arrest, the informant was at the residence of a female associate of Barrett's when Barrett called and that's when Barrett advised the female that they needed to identify the informant and, quote, "take care of him," end quote.

There is also Travis Crawford and Travis Crawford is -- you know, this statement about taking care of someone -- I mean, I must admit that sometimes perception is reality and the Court needs to deal with reality rather than someone's unreal fears, but I don't believe in the context of this case that these concerns are unrealistic. Travis Crawford was in Kenneth Barrett's yard on the afternoon of the charged murder when there was an apparent drive-by by an unmarked police vehicle. Travis Crawford apparently was told by the defendant that the defendant recognized the Bronco as a cop car, expressed that he didn't give an explicitive, that the law was coming in, and said that he was going to go out in a blaze of glory. As we have --

THE COURT: When did that witness testify?

MR. LITTLEFIELD: He has not yet testified. Part of our concern too here is, Your Honor, these are not witnesses that have previously testified in state court. So does the defendant have some idea as to whom he interacted with at or about that time? Yes. Does he

KEB100605

know about these specific people by name? No.

THE COURT: I was curious about -- you said that witness said that he could testify that the defendant said something about a cop car?

MR. SPERLING: On the day --

THE COURT: Before it happened?

MR. SPERLING: Yes, before it happened. Well, the day prior to the midnight event or so. So, this is within a relative few hours that -- apparently there was a drive-by by an unmarked Bronco. It was Buddy Hamilton.

THE COURT: I understand.

MR. SPERLING: And the defendant saw it, made it as a cop car, said the law was coming in, said he didn't give an explicitive, and said he was going to go out in a blaze of glory. Part of the problem there is this guy, as well as Cindy Crawford -- Travis Crawford is Kenneth Barrett's cousin. It would take minimal effort for him to establish contact with and intimidate that witness through any number of family members. It's for those reasons, essentially, Your Honor, that when we put together the collection of information, we have a cause for concern about these witnesses and our proposal was to turn them over to the defense, if the Court should so permit -- well, a time -- in a time frame reasonably close to when they would testify sufficient to make inquiry, but at the

FORM C-100 · LASER REPORTERS PAPER & MFG. CO. 800-626-6313

same time, you know, not now, not two plus weeks prior to their testimony.

THE COURT: Is there anything else to support the government's contention that these witnesses are in fear of their life, other than what you have told me?

MR. SPERLING: Their expressions, the circumstances with which they are familiar concerning the defendant. They are aware of the charges, they are aware of the facts that underlie the charges that the defendant faces now. They know how things are...

THE COURT: But you are telling me that there is no -- there is no evidence of any overt activities by anyone on behalf of the defendant to intimidate witnesses that you are aware of?

MR. LITTLEFIELD: Not directly because, Judge, their names haven't been revealed.

THE COURT: Well, I know that.

MR. LITTLEFIELD: And that's part of the reason why I believe that there hasn't been a run on them.

THE COURT: Well, what -- what concerns me is that this incident, the factual scenario that leads us to this trial, as I understand it, took place in 1999. There has been two trials in state court and I think what you are telling me is none of these people have testified at any of those trials?

KEB100607

MR. LITTLEFIELD: That's correct. One -- only one of the names was revealed, even slightly indicating that there would be this kind of damaging testimony.

THE COURT: But what -- what you are telling me is nothing -- you have no evidence of anyone being threatened that is on your witness list now. You are saying if we list them, we are afraid they will be threatened?

MR. LITTLEFIELD: No. The informant -- while they didn't know the name, Barrett did make a threat as to the informant.

THE COURT: But that's six years ago.

MR. LITTLEFIELD: That's correct. And the informant has never been identified. Now the informant will be identified.

THE COURT: Well, the other thing I haven't asked you, how many witnesses -- how many are there, what are the numbers, total, that you are seeking to protect?

MR. SPERLING: Seven.

THE COURT: Of course, I don't know if there is an overlap in their testimony. Are they testifying to the same thing?

MR. SPERLING: They each had separate points of view concerning separate incidents, Your Honor. These -- we are not calling collectively people who saw

the same thing at the same time.

THE COURT: Is there -- how many of these people are in custody now?

MR. SPERLING: Two.

THE COURT: Well, of course, then, once they testify, I assume they are in danger.

MR. LITTLEFIELD: This is -- I think the possibility is diminished because the damage has been done. There is certainly less --

THE COURT: You know, one of -- you haven't discussed it about all of the seven witnesses, perhaps it's a larger task, but it appears it would at least be possible to -- the two inmates, as much as you can do in an inmate situation, could be moved and protected.

MR. SPERLING: Well, one of them is in state custody, Your Honor, and, yes, that can be done. At the same time, sometimes that's even more dangerous than a circumstance where someone is out and about because you can move them, but you are moving them in a closed system and word travels.

THE COURT: Of course, the other is inconvenient and perhaps expensive. Those that are out could be protected also until the trial.

MR. SPERLING: Yeah, I -- I know sometimes this is difficult to quantify. We had a murder defendant some

years ago, who was a capital defendant in a case, and he has killed again in a federal prison because he found out that a person was an informant and he arranged apparently to be kept in the same cell and literally kicked and beat him to death, John McCullough. You know, I hate to make -- my purpose isn't to make a generalization. At the same time I think we should exercise common sense.

THE COURT: Well, I know. I'm aware of the McCullough situation. That's what I'm saying. Once they testify, they are essentially in danger for the rest of their lives.

MR. SPERLING: Well, yeah, and I see the point that there could be a diminished danger because now the testimony is there. On the other hand, --

THE COURT: You are concerned about --

MR. SPERLING: -- sometimes there is retaliation.

THE COURT: You are concerned about them being alive when it comes time to testify?

MR. SPERLING: Yes, Your Honor, and unthreatened and unintimidated.

THE COURT: Well, I still have -- and then I noticed in the -- there is 404(b) material obviously in the proposed motion, it appears to me.

MR. SPERLING: It appears to be implicit. These are events that occurred right around -- and they are the

FORM C-100 · LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

defendant's statements of intent.

THE COURT: There is also discussion of cooking meth --

MR. SPERLING: Yes, but he is maintaining a place, Your Honor. This is consistent with maintaining a place to manufacture. I mean, that's one of the predicate offenses for --

THE COURT: So you see no 404(b) concerns with any of this testimony?

MR. SPERLING: No.

THE COURT: I still -- I have -- I will take this matter under advisement. We need to proceed with the jury selection. I think it's important that the Court enter an order promptly, one way or the other. So, I'll see you downstairs.

Wait just one second.

(PAUSE)

THE COURT: Anything further from the government?

MR. SPERLING: No, Your Honor.

(END OF PROCEEDINGS)

KEB100611

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,               )
          Plaintiff,                    )
                                        )
vs.                                     )          NO. CR-04-115-P
                                        )
KENNETH EUGENE BARRETT,                 )
          Defendant.                    )

                    *      *      *

TRANSCRIPT OF HEARING ON GOVERNMENT'S MOTION
FOR ORDER DELAYING THE PRODUCTION OF WITNESS
NAMES AND REQUEST FOR PROTECTIVE ORDER

BEFORE THE HONORABLE JAMES H. PAYNE
UNITED STATES DISTRICT JUDGE

SEPTEMBER 13, 2005

VOLUME II OF II

                    *      *      *

A P P E A R A N C E S:

FOR THE PLAINTIFF:          MR. SHELDON J. SPERLING
                            United States Attorney
                            MR. D. MICHAEL LITTLEFIELD
                            Assistant United States Attorney
                            1200 West Okmulgee Street
                            Muskogee, Oklahoma 74401

FOR THE DEFENDANT:          MR. ROGER HILFIGER
                            Attorney at Law
                            620 West Broadway
                            Muskogee, Oklahoma 74401

                            MR. BRET A. SMITH
                            Attorney at Law
                            315 North 5th Street
                            Muskogee, Oklahoma 74401

COURT REPORTER:             KARLA S. McWHORTER
                            UNITED STATES COURT REPORTER
                            P. O. Box 2251
                            Muskogee, Oklahoma 74402

KEB100612

COURT IN SESSION

THE COURT: Let the record reflect the Court is in session again in U.S.A. versus Kenneth Eugene Barrett, CR-04-115. The record should reflect that the defendant is present with counsel and the Government's counsel is present.

It came to the Court -- this Court's attention Monday morning, just before the Court started the hearing on selection of jurors, or doing what we refer to as the death penalty qualification, that the Government had filed a motion requesting that their motion be filed under seal. I looked at the motion and granted the motion, the motion to file under seal, and later in the day, started examining the actual motion, and then into the evening yesterday, examining it, and decided, after looking at it, that it was necessary to set the matter for a sealed hearing first thing this morning, at which time the U.S. Attorney appeared and made a presentation on what was entitled Government's Motion for Order Delaying the Production of Witness' Names. That hearing was concluded. Then, as we started to begin the hearing for qualification of death qualified jurors, it was my understanding the U.S. Attorney desired to make an announcement, and at that point, I stopped the proceeding because I was concerned about the sealed issue.

KEB100613

And, so, I want to make inquiry of the Government at this time, if you desire to proceed with this matter in the presence of defense counsel, and do you desire that this matter continue to be sealed?

MR. SPERLING: I think we can proceed with defense counsel. I think where we were at -- and I'm doing my best, Your Honor, to recall where we were when we stopped -- when I -- I'm not sure exactly what thought I was --

THE COURT: I'll tell you where I was, is I was -- because of the nature of the pleading, I was concerned about security issues. And, so, that's why I thought it appropriate to stop and wait to hold this hearing at a time when we had more time to think about it. And the nature of the announcement you were about to make, it sounded like there had been some discussion with defense counsel. And that's about as much as the Court knows.

MR. SPERLING: Okay. I'm willing for the matter to be unsealed. And here is where we are, Your Honor. I would really like to give this some additional thought, because we want to expeditiously identify the witnesses to defense counsel. We have attendant causes for concern. And, you know, I'm just thinking a bit aloud now, but I would want the Court's standard admonition with regard to

FORM C-100 - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

contacting witnesses. We are working in the direction of either making the witnesses available in our office, or providing information such that the investigator for the defense can contact them and locate them. I'd really like to give this some thought this evening, before we come up with an explicit plan, but I think in one way or another, we're prepared, in the very near future, to do one of those two things.

THE COURT: From the defense?

MR. HILFIGER: Well, I don't have much more to say about -- I mean, we have talked about it, and they've made some offer, and I think that that's a workable solution. Jumping into another matter, though -- because what we were talking about is, like, sometime next week, maybe having them made available, knowing that, you know, we still have this death penalty qualification going on. But we sort of discussed and asked -- you know, sort of inquiring of the Court, is it your intention to go through everybody, or are you going to -- or is it your attention, when you reach a certain number that you think are death qualified jurors, that we stop at that point?

THE COURT: Well, the only -- I haven't, of course, made a final decision. I would say, just to give you some indication, I think we've made very good progress these first two days. If we continue to make that kind of

KEB100615

progress, I would, of course, inquire of both the Government and the defense, I think that if these numbers continue to add, like they have these two days, the next two or three days, I would think by the end of this week, at the latest, we would have enough jurors and we would stop -- hopefully by Friday, we would have enough. Now, as you know -- as you both know, it may blow up in our face tomorrow and we don't qualify any.

MR. SPERLING: I wouldn't want to jinx it, Judge.

MR. HILFIGER: I can see --

THE COURT: But I'm not going to -- you know, I haven't really put a -- what's the magic number? I'm thinking if we get, you know, 75 or 80, we're close.

MR. HILFIGER: And I wasn't trying to tie you to a number, but sort of our thinking was that possibly this death qualification wouldn't be going all next week.

THE COURT: No. No. I haven't -- I have three -- hopefully three extra days in there, if necessary.

MR. HILFIGER: And that's sort of what we are thinking, those extra days, that that might be the time available if we could visit with these witnesses.

THE COURT: Well, that's -- I mean, the purpose of this hearing today was to clarify those issues. If

KEB100616

there's been discussion between the Government and the defendant, that you're making headway, and the defense has, perhaps, concerns -- no concerns, then I don't have any problem with that. I just wanted --

MR. HILFIGER: Yeah.

THE COURT: -- I wanted to get this issue -- when the U.S. Attorney mentioned it, you understand I'd ordered this matter sealed. And apparently what I heard was there was a discussion going on that the U.S. Attorney no longer had an interest in the matter being sealed, and I think that's where we are. It's unsealed now.

MR. HILFIGER: I don't think he has a problem with the matter being unsealed, but the names, at this particular time, are -- you know, his concern is that they are still in their own knowledge. You know, we don't know the names.

THE COURT: And I guess that's the issue -- I assume for you the issue is when -- how quickly are we going to get the names, is of importance to you, and I think Mr. Sperling is saying he wants to think about it tonight and perhaps he'll have an answer tomorrow.

MR. HILFIGER: That's why I was inquiring about what I had -- or what we had talked to the U.S. Attorney about was we didn't want to have these names after we start the trial, two or three days into the trial --

KEB100617

THE COURT: I do not --

MR. HILFIGER: -- and we get these names, and we have to go out and try to find them.

THE COURT: No. I want to avoid that at all possible cost, because I understand the dilemma the defense could have with having time to interview as the trial is moving forward.

MR. SPERLING: I think we can reach a reasonable accommodation, and give us the --

THE COURT: What I'd like to know, in the very near future, like, if at all possible by close of business, to know from the Government and the defense that this issue is resolved. That is, that you have a -- that the defense feels comfortable with the disclosure and time, and I don't want that -- I don't want this to be a -- if there is an issue, I want to have a hearing and get it presented and move on. I don't want it to be something that pops up after we have this jury selected.

MR. HILFIGER: Right.

THE COURT: So, I'm going to say -- I will ask for a report at the close of business tomorrow, to give the Government a chance to think about it. But at that time, if it's not resolved, then we'll need to set this for a hearing and deal with it.

MR. HILFIGER: Okay. That's fine, Judge.

FORM C-100 · LASER REPORTERS PAPER & MFG. CO. 800-828-6313

KEB100618

MR. SPERLING: Thank you, Your Honor.

(END OF PROCEEDINGS)

"I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter."

_____
KARLA S. McWHORTER

_____
DATE

KARLA S. McWHORTER
OKLAHOMA CERTIFIED SHORTHAND REPORTER
CERTIFICATE NO. 00981
EXPIRES DECEMBER 31, 2016

KEB100619