# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

## CASE NO. 09-7096

---

## In Re: KENNETH EUGENE BARRETT

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

---

## BRIEF FOR THE UNITED STATES IN OPPOSITION
## TO THE PETITION FOR WRIT OF MANDAMUS

---

**Respectfully submitted,**

**LANNY A. BREUER**
**Assistant Attorney General**
**U.S. Department of Justice**

**SHELDON SPERLING**
**United States Attorney**
**Eastern District of Oklahoma**
**/s Jeffrey B. Kahan**
**JEFFREY B. KAHAN**
**Trial Attorney**
**U.S. Department of Justice**
**1331 F Street, N.W.; Rm. 345**
**Washington, D.C. 20530**
**Tel: (202) 305-8910**
**Fax: (2020 353-9779**
**e-mail: jeffrey.kahan@usdoj.gov**

## **TABLE OF AUTHORITIES**

**CASES**                                                                                         **Page**

*Ake v. Oklahoma*, 470 U.S. 68 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Charge of Judicial Misconduct*, 91 F.3d 1416 (10th Cir. 1996) . . . . . . 10, 20

*In re United States*, 441 F.3d 44 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 21

*Liteky v. United States*, 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

*Lowry v. Barnhart*, 329 F.3d 1019 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 10, 20

*McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 1

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 23

*Rojem v. Gibson*, 245 F.3d 1130 (10th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Barrett,* 496 F.3d 1079 (10th Cir. 2007) . . . . . . . . . . . . 3, 8, 12, 13

*United States v. Erickson*, 561 F.3d 1150 (10th Cir. 2009) . . . . . . . . . . . . . . . 6, 16

*United States. v. Kimball*, 73 F.3d 269 (10th Cir.1995) . . . . . . . . . . . . . . . . . . . 15

*United States v. Lee*, 374 F.3d 637 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Napue*, 834 F.2d 1311 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 9

*United States v. Nickl*, 427 F.3d 1286 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . 14

*United States v. Pearson*, 203 F.3d 1243 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . 6

*United States v. Whalen*, 976 F.2d 1346 (10th Cir. 1992) . . . . . . . . . . . . . . . . . 23

*Weston v. Mann (In re Weston)*, 18 F.3d 860 (10th Cir.1994) . . . . . . . . . . . . . . . 5

*Witherspoon v. Illinois*, 391 U.S. 510 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

18 U.S.C. §§ 924(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924(c)(1)(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 848(e)(1)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

Code of Conduct for United States Judges, Canon 3A(4) (2000) . . . . . . . . . . . 9, 10

ii

In re: KENNETH EUGENE
BARRETT,

Petitioner.

) Case No. 09-7096
) Dist. Ct. Case No. 6:09-CV-00105-JHP
) (E.D. Oklahoma)
)
)

**BRIEF FOR THE UNITED STATES IN OPPOSITION
TO THE PETITION FOR WRIT OF MANDAMUS**

Petitioner Kenneth Eugene Barrett seeks a writ of mandamus compelling the recusal of Chief District Judge James H. Payne. Judge Payne presided over Barrett's criminal trial, which resulted in a conviction and death sentence. The Judge is currently presiding over Barrett's collateral challenge to the judgment filed pursuant to 28 U.S.C. § 2255. On September 11, 2009, Judge Payne denied Barrett's motion to disqualify him. On October 14, 2009, Barrett filed his Petition for Writ of Mandamus in this Court challenging the denial of recusal. The government submits this Opposition pursuant to the October 22, 2009, Order of this Court calling for a response to the Petition.

## <u>JURISDICTION</u>

This Court has jurisdiction to consider Barrett's Petition for Writ of Mandamus under 28 U.S.C. § 1651. *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991); *see Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995) (reversing the denial of Nichols's pretrial motion for recusal of the assigned district court judge).

**QUESTION PRESENTED**

Whether Barrett has shown a clear and indisputable right to have Judge Payne disqualified from deciding Barrett's § 2255 motion, on the ground that the judge was biased at trial.

**STATEMENT OF THE CASE**

On February 9, 2005, a federal grand jury for the Eastern District of Oklahoma returned a superseding indictment that charged Barrett with using and carrying a firearm during and in relation to a drug trafficking crime, resulting in death (18 U.S.C. §§ 924(c)(1)(A) and (j)); using and carrying a firearm in relation to a crime of violence (18 U.S.C. §§ 924(c)(1)(A) and (j)), i.e., the killing of a state law enforcement officer engaged in the performance of his official duties; and intentionally killing, during the commission of a felony violation of the Controlled Substances Act, a state law enforcement officer engaged in the performance of his official duties (21 U.S.C. § 848(e)(1)(B) (2000)). On February 15, 2005, the government filed a notice of intent to seek the death penalty on all counts.

Trial commenced on September 26, 2005, and on November 4, 2005, the jury convicted Barrett on all counts. On November 17, 2005, following a penalty trial, the jury recommended the imposition of life sentences for Counts 1 and 2, and a death sentence for Count 3. On December 19, 2005, the trial court imposed the

2

recommended sentences. This Court affirmed. *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), *cert. denied*, 1285 S. Ct. 1646 (2008).

On March 16, 2009, Barrett filed a Motion for Collateral Relief under 28 U.S.C. § 2255. The next day, he filed a Corrected Motion for Collateral Relief that requested, among other things, Judge Payne's recusal. On May 29, 2009, Barrett moved to disqualify Judge Payne under 28 U.S.C. §§ 144 and 455. On September 11, 2009, Judge Payne denied the recusal motion, rejecting the § 144 theory on procedural grounds and the § 455 theory on substantive grounds. On September 25, 2009, Barrett filed an Amended Motion for Collateral Relief. During a hearing held on October 6, 2009, Judge Payne noted several procedural irregularities in Barrett's three motions for collateral relief, and granted him 30 days in which to amend his motion once again. (*See* Pet. Exs. K & L.) Judge Payne has since extended that deadline to December 6, 2009.

On October 14, 2009, Barrett filed this Petition for Writ of Mandamus, seeking to compel Judge Payne's recusal under 28 U.S.C. § 455, and – in the alternative – requesting remand for an evidentiary hearing before a different judge. On October 22, 2009, the Court ordered the instant response.

## SUMMARY OF ARGUMENT

Barrett falls far short of clearly and indisputably demonstrating a right to Judge Payne's disqualification, and this Court should therefore deny the writ of mandamus. There is no merit to Barrett's belated claim that Judge Payne showed bias in allowing the government to file a sealed motion to delay disclosing witness names for safety reasons, and in not informing the defense of his initial reservations about the merits of the motion. The judge advised the defense of the ex parte hearing on the motion the day it was held, and the defense then agreed to a disclosure schedule. Tellingly, Barrett did not present his current claim of bias on direct appeal to this Court. Moreover, the hearing transcript reveals the pains the judge took to protect Barrett's trial rights.

Barrett also fails as a matter of law to show that Judge Payne's pre-trial rulings on defense funding and the appointment of counsel reflected any bias.

Barrett further fails to demonstrate a right to relief premised on Judge Payne's order denying his current attorneys equitable tolling to delay the filing of the § 2255 motion. While the order refers to data obtained from an extra-judicial source – a website maintained by counsel – the information was of little importance to Judge Payne's decision, and his reference to it in the order does not reflect any misconduct or partiality.

Barrett's flawed arguments do not justify the extraordinary remedy of mandamus. Nor is he entitled to an evidentiary hearing, as his allegations are meritless on their face.

**<u>ARGUMENT</u>**

Barrett alleges three bases for disqualifying Judge Payne: (1) the judge improperly allowed the government to filed a sealed motion to delay disclosing witness names and then did not tell the defense of concerns he had expressed about the merits of the motion during an ex parte hearing on the motion; (2) the judge made rulings under the Criminal Justice Act and cannot impartially adjudicate the propriety of his own decisions under § 2255; and (3) the judge improperly denied a request for additional time to file the § 2255 Motion based on an independent investigation of facts. None of the grounds relied upon would lead a reasonable person to question Judge Payne's impartiality. Because Barrett cannot show an indisputable right to have Judge Payne disqualified from conduction the § 2255 proceedings, this Court should deny the request for a writ of mandamus.

A.    <u>Standard of Review</u>

While the denial of a recusal motion may be challenged through mandamus proceedings, the writ will issue only upon "a showing of a clear and indisputable right to relief." *Nichols v. Alley*, 71 F.3d at 350 (citing *Weston v. Mann (In re Weston)*, 18

5

F.3d 860, 864 (10th Cir.1994)). Thus, a successful mandamus petitioner "must demonstrate a clear abuse of discretion, or conduct by the district court amounting to a usurpation of judicial authority." *Nichols*, 71 F.3d at 350 (citing *Mallard v. United States District Court*, 490 U.S. 296, 309 (1989)). "To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek." *Id.*

A court must recuse itself if "sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Erickson*, 561 F.3d 1150, 1169 (10th Cir. 2009); *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000); *see* 28 U.S.C. § 455(a). As the Supreme Court has noted, "[n]ot *all* unfavorable disposition towards an individual (or his case)" amounts to bias or prejudice. *Liteky v. United States*, 510 U.S. 540, 550 (1994) (emphasis in original). Bias and prejudice "connote a . . . disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess." *Id.* (emphasis in original). An opinion or view held by a judge based on information received in earlier proceedings is "not subject to deprecatory characterization as 'bias' or 'prejudice.'" *Id.* at 551. A judge has "as much obligation . . . not to recuse when there is no occasion for him to do so as [he has] when there is."

*United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (internal quotation marks omitted).

B.      Barrett Has Failed to Demonstrate Judicial Bias Requiring Recusal

        1.      Allegedly Improper Ex Parte Contact

Barrett's claim of bias based upon Judge Payne's allegedly improper ex parte communications with the government is frivolous.   While Barrett claims an indisputable right to relief on this ground, he cannot overcome the fact that he required three years to recognize what he now contends any reasonable person would perceive as indicia of bias.  Barrett's belated recognition of error undercuts his effort to show manifest injustice.  In any event, the record shows that Judge Payne did not err or otherwise act in a manner that evidences partiality of any stripe.

On Friday, September 9, 2005, the government – as it had announced it would do earlier that day in open court, *see* Opp. Ex. A, at 29-30 – filed a sealed motion requesting authorization to delay furnishing the defense with a list of the witnesses to be produced at trial, based on "evidence that providing the list may jeopardize . . . life or safety[,]" 18 U.S.C. § 3432.  In the motion, the government specifically alleged that Barrett had spoken about the need to "take[] care of" a confidential informant.[1]  On

---

        [1]The informant had provided the factual basis for a search warrant executed at Barrett's home.  During the execution of that warrant, Barrett committed the homicide that gave rise to this case.

7

September 12, 2005, Judge Payne began qualifying prospective jurors to participate in voir dire by eliminating those who had hardships or who harbored disqualifying views under *Witherspoon v. Illinois*, 391 U.S. 510 (1968). The next day, Judge Payne held an ex parte hearing on the motion to delay the disclosures. (*See* Pet. Ex. A at 8.) During the hearing, Judge Payne questioned the government about when trial could be said to have begun for purposes of § 3432 disclosures, *see* Pet. Ex. N at Vol. I, pp. 4-6, and the government represented that all counsel were "operating under the inference that the trial begins on or after [September] 26th" and that it had disclosed to the defense the "essence of the testimony of the witnesses," Pet. Ex. N at Vol. I, pp. 7, 9-10. After the prosecutors argued the merits of their request to delay disclosure, Judge Payne took the matter under advisement, *id*. at 23, and later that same day, he informed the defense of the hearing, Pet. Ex. N at Vol. II, pp. 25-26. In open court, the parties began making arrangements for the defense to meet with the witnesses, obviating the need for the court to rule on the motion. *Id.* at 26-30. On appeal, this Court held that the disclosures were timely made under § 3432, and that even if the disclosures had been untimely under the statute, the error was not plain and would not merit relief. *United States v. Barrett*, 496 F.3d at 1115-17.

This Court had no occasion to consider a claim that Judge Payne improperly held an ex parte hearing or withheld information, because Barrett raised no such issue

on direct appeal, even though he had access to a transcript of the hearing.  (*See* Pet. Ex. V at 6.)  Barrett's silence on appeal – where he was represented by one of his trial lawyers – speaks volumes about the likelihood that a reasonable person would question Judge Payne's impartiality as a result of his conduct.

Indeed, Barrett cannot show that Judge Payne's decision to conduct an ex parte hearing in this instance was unauthorized, or even unwise, given that the proceeding concerned discussions about potential threats to witnesses whose identities were to be disclosed under § 3432.  As the Seventh Circuit has observed, "where the government fears that disclosing a list of its witnesses would pose a threat to their safety, ex parte communications between the court and the government may be appropriate in determining whether or not the list should be provided." *United States v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1987); *see also United States v. Lee*, 374 F.3d 637, 652 (8th Cir. 2004) (noting in dicta that Fed. R. Crim. P. 16(d) authorizes ex parte communications in the context of § 3432).

Nevertheless, Barrett alleges a violation of Canon 3, Rule 4 of the Judicial Conference's Code of Conduct for United States Judges, which limits the circumstances for ex parte communication and requires disclosures of "unauthorized ex parte communication bearing on the substance of a matter." (*See* Pet. 16-17.)  The rule quoted by Barrett was, however, adopted by the Judicial Conference in July 2009,

nearly four years after the ex parte hearing. The Judicial Conference Canon in effect in 2005 was far less specific than the rule quoted by Barrett and did not speak to disclosures:

> A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte communications on the merits, or procedures affecting the merits, of a pending or impending proceeding.

Code of Conduct for United States Judges, Canon 3A(4) (2000).

Aside from the fact that the then-current canon did not prohibit Judge Payne's actions, the entire Code of Conduct is merely "aspirational." *In re Charge of Judicial Misconduct*, 91 F.3d 1416, 1417-18 (10th Cir. 1996). "The fact that a judge's conduct violates the [Judicial Conference's] Canons . . . does not necessarily mean that it constitutes judicial misconduct." *Id.* at 1418. In addition to the 2009 Judicial Conference Code, Barrett cites the American Bar Association's Model Code of Judicial Conduct. However, the ABA's Model Code creates no "legally enforceable duties." *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003). Given the absence of applicable legal support for his claims, Barrett simply cannot demonstrate that an objective person, knowing all the relevant facts, would question Judge Payne's impartiality, or that Judge Payne's decision to hold an ex parte hearing was

inappropriate or would subject him to any "disciplinary proceedings or public obloquy," as Barrett claims. (Pet. at 17.)

Barrett's arguments to the contrary rely on misinterpretations of the record. Barrett claims that Judge Payne saw "no merit" in the motion to delay disclosure. (*See* Pet. 14 & 15, citing Pet. Ex. N at Vol. I, pp. 4-5, 7, 13 & 19-20.) Judge Payne did not, however, indicate that he had decided the motion's merits. (*See* Pet. Ex. N at Vol. I, p. 23 ("I will take this motion under advisement.").) Rather, he sought to learn what evidence the government intended to marshal in order to show its concerns for witness safety. (*See, e.g.,* Pet. Ex. N at 13 ("So what I'm interested in hearing is what is the support for the – what evidence am I going to be furnished to demonstrate that these people are in danger?"), 19-20 (eliciting an explanation that the identification of confidential informant might permit Barrett to act on six-year-old threat).) Nor did he reject the government's contention that witnesses were in need of protection. (*See id.* at 21 (asking the prosecutors whether they could guard two inmate-witnesses by placing them in protective custody).)

Barrett's attempt to blame Judge Payne's alleged bias toward him for his own failure to preserve a claim about the commencement of trial under § 3432 (Pet. 14 (citing Pet. Ex. N at 4-5)) is beyond the pale. As this Court found on direct appeal, "defense counsel expressly acquiesced in the disclosure schedule proposed by the

government and at no time thereafter complained" of a violation of § 3432. *United States v. Barrett*, 496 F.3d at 1117; *see also* Pet. Ex. N at Vol. II, p. 27 (in which the defense acknowledged that the parties had arrived at "a workable solution"). Judge Payne was not seeking to give the government any advantage by alluding to the need to comply with § 3432 during the ex parte hearing. In fact, the judge had discussed the statute in open court just four days beforehand, when defense counsel made no effort to challenge the government's assertion that trial did not begin for § 3432 purposes until the jury was sworn, but that out of "an abundance of caution . . . [the prosecution was] endeavoring to give the completed witness list to the defense in advance of the individual voir dire." (*See*. Opp. Ex. A.) Defense counsel was, thus, on notice about the application of the statute, and Judge Payne's comments during the ex parte hearing sought only to protect Barrett's right to adequate notice of the witnesses to be called at trial.

Barrett further errs in arguing that Judge Payne displayed bias in not alerting the defense that it might want to seek a continuance in the event of late disclosure. (*see* Pet. 14 & 15 (citing Pet. Ex. N at Vol. I, pp. 10-12).) The problem for Barrett is that counsel surely knew how to ask for a continuance if they thought one necessary. They decided, instead, to "expressly acquiesce [] in the disclosure schedule proposed

12

by the government and at no time thereafter complained about the timing of the disclosure [or] requested additional time[.]" *United States v. Barrett*, 496 F.3d at 1117.

Barrett also claims that Judge Payne was biased in not alerting him to a matter that the judge thought might implicate Federal Rule of Evidence 404(b). (Pet. 14.) But the court said nothing to imply the government had violated any rule. At no time did Judge Payne prejudge the issue or withhold from the defense a legal theory it could not have independently recognized. Not only was defense counsel presumably aware of the Rules of Evidence, and capable of asserting them based on their own judgment, but Judge Payne had broached the subject of Rule 404(b) in open court just two weeks before the ex parte hearing, providing the defense with adequate notice that he would apply that rule. (*See* Opp. Ex. B at 122-23.)

Finally, Barrett complains that Judge Payne displayed bias by not revealing an alleged concession by the government that it knew of a witness who contradicted Charles Sanders. (Pet. 14-15 (citing Pet. Ex. N at Vol. I, pp. 14 & 17).) While Barrett cites two pages from the ex parte hearing transcript, neither citation reflects an admission by the government to the existence of a witness who would contradict Sanders. Indeed, the entire transcript is devoid of any such reference. Accordingly, neither the prosecution nor the court kept any necessary information from the defense.

Given all the relevant facts concerning the ex parte hearing, no objective person would have a reason to conclude that Judge Payne possessed any wrongful, inappropriate, or biased attitude toward the defense. Indeed, Barrett's own appellate lawyers failed to detect one, and Barrett has not shown a clear and indisputable right to relief.

2. CJA Rulings

Barrett argues that Judge Payne must be disqualified from deciding his § 2255 motion because it challenges rulings the judge made under the Criminal Justice Act ("CJA"). Specifically, he complains that Judge Payne did not authorize sufficient funding to investigate and prepare the case for trial, and that when lead defense counsel John Echols then withdrew from the case, he was replaced by co-counsel Roger Hilfiger, who had not been one of the attorneys recommended by the Federal Public Defender's Office to represent Barrett. According to Barrett, Judge Payne's CJA rulings were the product of bias ("marked dissatisfaction with Mr. Echols as an attorney and marked personal regard for Mr. Hilfiger," Pet. 21), and Judge Payne cannot be expected to reconsider those decisions fairly. (Pet. 18-25.) Barrett is not entitled to mandamus relief.

A party alleging judicial bias should move for recusal, and "must do so in a timely fashion." *United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (citing

*United States. v. Kimball*, 73 F.3d 269, 273 (10th Cir.1995)).  This Court has not

specifically defined timeliness within the meaning of § 455, but it does require a party

to act promptly once it knows of the facts that would support the motion.  *Willner v.*

*Univ. of Kan.*, 848 F.2d 1023, 1028-29 (10th Cir. 1988), *cert. denied*, 488 U.S. 1031

(1989).

In this case, Barrett's recusal motion was untimely.  By Barrett's own account,

Judge Payne's alleged "dissatisfaction" with Echols existed before Echols withdrew

from the case in May 2005, and partially motivated that withdrawal.  Barrett, however,

waited until 2009 to seek recusal on grounds of bias against Echols.  Judge Payne was

thus correct in finding the claim untimely.  (*See* Pet. Ex. A at 19.)  Barrett makes no

attempt to excuse this glaring procedural flaw, which undermines his effort to show

a clear and indisputable right to relief.

Barrett's claim of bias also fails because it relies on the flawed premise that

Judge Payne's CJA rulings necessarily foreclose his objective consideration of the §

2255 motion.  Generally,

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky v. United States*, 510 U.S. at 555. In fact, the law presumes that trial courts can objectively consider the merits of their own prior decisions when considering § 2255 motions. *See* 28 U.S.C. § 2255, ¶ 1 ("A prisoner in custody under sentence of a court established by Act of Congress ... may move the court which imposed the sentence to vacate, set aside or correct the sentence."); *see also United States v. Erickson*, 561 F.3d 1150, 1169 (10th Cir. 2009) (noting that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). That presumption is not overcome here.

Although Barrett attributes Judge Payne's careful scrutiny of Echols's funding requests to the judge's alleged personal animus toward Echols, the denial of some requests and cutbacks on others were quite reasonable, given Echols's familiarity with the case: he had represented Barrett in two state trials arising from the same set of facts as those underlying the federal indictment. (*See* Pet. Ex. A at 17, 18 & n. 15.) Indeed, Judge Payne referred Echols's budget submissions to a magistrate judge for initial consideration, and the magistrate recommended an adjustment of time claimed, based on "striking similarities" in the work done in the two cases. (*See* Pet. Ex. A at 18 n.15; Pet. Ex. Q at 2-3.) As for Barrett's attempt to cast aspersions on Judge Payne's appointment of Hilfiger, we note that the attorney is a former United States Attorney for the Eastern District of Oklahoma who had previously tried, in that

16

district, a federal capital case in which the jury decided against imposting the death penalty on his client.  (*See* Pet. Ex. A at 17-18.)  Judge Payne's decision to replace Echols with Hilfiger, Echols's co-counsel, followed Echols's request to withdraw, and in no way shows bias by the judge.

Regarding Barrett's attempt to raise the specter that Judge Payne might be called as a "witness" at the proceedings on his § 2255 motion, we note that Judge Payne's reasons for his CJA rulings have no bearing on whether Barrett received adequate defense funding and effective assistance of counsel at trial.  Judge Payne's motives in administering the CJA, on the basis of the information proffered in defense funding requests, are irrelevant to his retrospective determinations regarding the sufficiency of counsel, analyzed in view of the trial record under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), or the adequacy of defense funding, adjudicated in view of the record under such authority as *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985) and *Rojem v. Gibson*, 245 F.3d 1130, 1139 (10th Cir.2001).  There is thus no reasonable basis for believing Judge Payne might testify in the § 2255 proceedings.

In sum, Judge Payne's CJA rulings in no way entitle Barrett to mandamus relief.

3.   <u>Denial of Motion to Toll Statute of Limitations on § 2255 Motion</u>

Barrett claims that Judge Payne should be disqualified from deciding his § 2255 motion because the judge consulted an Internet website maintained by co-counsel Tivon Schardl's employer, the Federal Public Defender for the Eastern District of California ("FDO"), in drafting an order denying the defense additional time in which to file the § 2255 motion. (Pet. 25-30.) The basis for Barrett's request for additional time was a long-term medical condition afflicting Mr. Schardl. Judge Payne denied the request in view of the availability of lead counsel to draft the § 2255 motion, the adequacy of time provided to complete the pleading, and the lateness of the request for equitable tolling in view of the time Mr. Schardl had known of his illness. Judge Payne committed no impropriety, let alone one that would justify mandamus relief.

At the outset of his order denying additional time, Judge Payne recited – in a single sentence – some rudimentary data about the FDO that he attributed to an Internet website. (Pet. Ex. E at 1-2 (citing http://www.cae-fpd.org/attorneys.htm).) As summarized in the order, the website indicated that the FDO employed a "Federal Public Defender, one 'first assistant,' three 'supervising attorneys' in addition to Mr. Schardl, one 'senior litigator,' eighteen (18) 'assistant federal defenders,' two (2) research and writing attorneys, in the Sacramento office where Mr. Schardl is employed and eleven (11) other attorneys in their Fresno office." (*Id.* at 1.) The order's denial of equitable tolling was, however, based primarily on the availability

18

of lead counsel, rather than FDO staff, to assist in drafting the § 2255 motion. The

order explained the reasons for rejecting Barrett's request without directly

commenting on the FDO's resources:

> At this stage in the process, counsel herein should be fairly close to
> completing any motion they intend to file. Certainly counsel should
> have completed all of their investigation and a substantial draft of their
> motion. Additionally, the Defendant has never alleged "actual
> innocence." Furthermore, in light of the fact Mr. Autry is lead counsel
> and the Federal Defender in the Eastern District of California voluntarily
> accepted this appointment as co-counsel, this Court finds the Defendant
> has failed to establish that counsel can not timely file a completed
> motion to vacate within the current statute of limitations period. Notice
> provided to the Court more than two months after Mr. Schardl began
> having difficulties with a long-term medical condition is not sufficient
> cause for this Court to toll the statute of limitations herein. Counsel was
> appointed and has had sufficient time to prepare a Motion to Vacate, Set
> Aside or Correct the Sentence in this matter. Additionally, co-counsel
> has had sufficient time to seek the assistance of other attorneys within his
> office.

(*Id*. at 3.)

In short, Judge Payne denied the request for equitable tolling because he found

that counsel had received adequate time to complete the pleading and should have

informed the court of his medical situation months beforehand. Judge Payne's

subsidiary point, that Mr. Schardl could have sought assistance within his office

earlier, added little to the grounds for his decision. To the extent that his subsidiary

point may refer, without citation, to information available on the website, the order

elsewhere indicated that Judge Payne had an independent source for that knowledge.

19

The order explained that Judge Payne received guidance from two Oklahoma-based public defenders in his initial decision to appoint the FDO. (*Id*. at 2 n.1.) Thus, the order implied that Judge Payne possessed information about the FDO when he appointed it, at least to the extent he understood it was large and sophisticated enough to include a unit dedicated to capital habeas litigation.

Despite the insignificance of the website information to the denial of equitable tolling, Barrett nevertheless claims that Judge Payne violated rules propounded by the ABA and the Judicial Conference. (*See* Pet. 25-26.) But, as discussed in argument B,1, neither the Judicial Conference's Code of Conduct for United States Judges, nor the ABA model code, bound Judge Payne. *See Lowry v. Barnhart*, 329 at 1024; *In re Charge of Judicial Misconduct*, 91 F.3d at 1417-18. Conceding that the Judicial Conference Code does not directly bar any supposed "investigations," Barrett contends that its ban on ex parte contact prohibited the Judge Payne's action, though there is no indication that the government encouraged such a decision. Indeed, Barrett's claim that Judge Payne acted ostensibly as a government investigator flies in the face of the fact that the prosecution took no position on the equitable tolling issue, filing a response to the request that stated, "Given the nature and substance of communications heretofore between counsel for defendant and the Court, this Court is likely in a much better position than the [United States Attorney] to assess whether

20

defendant has diligently pursued his rights." (Pet. Ex. D at 1.) Barrett's strained attempt to identify some basis for a claim of judicial misconduct necessarily falls short of showing a clear and indisputable right to relief.

Barrett's reliance on *In re United States*, 441 F.3d 44 (1st Cir. 2006), is also misplaced. That case did indeed involve an investigation by the trial court – an investigation that was extensive, invasive and overzealous:

> We are struck by the district court's insistence . . . not only on continuing an investigation that had already yielded results not showing any government wrongdoing, but also on resuscitating leak claims that had been dormant for over a year. We are struck by its orders that the government disclose yet further information as to the return of the indictment by the third grand jury, even when the government had already provided explanations, despite there being little basis in the law or in fact for the inquiry. Of particular concern is the decision by the district court to delay the trial, apparently in order to reserve the power to dismiss the indictment, when there was never any realistic basis to consider dismissal of the indictment as a remedy.

441 F.3d at 68. The investigation in that case bears no resemblance whatever to Judge Payne's passing reference to a government agency's website.

Nor does the Seventh Circuit's decision in *Edgar v. K.L.*, 93 F.3d 256, 258 (7th Cir. 1996), help Barrett. There, the court of appeals ordered recusal of a trial judge after he engaged in a 3½-hour long meeting with a panel of experts he had appointed to investigate the defendant (a state mental health system); the judge refused to disclose the substance of the discussions even though they involved the merits of the

21

lawsuit. *Id.* at 258. Notably, in so ruling, the Seventh Circuit expressly cautioned against "disqualifying a judge for learning a trivial fact in mid-trial of an extended case." *Id.* at 259.

Here, Judge Payne obtained a datum published by appointed counsel about itself, did not directly rely on it in denying equitable tolling, and will have no reason to consider it in deciding the § 2255 motion. Even if Barrett is correct, that the information overstates the number of attorneys who might have substituted for Mr. Schardl *see* Pet. Ex. B at 19-20, Judge Payne's assessment was fair and unassailable: Mr. Schardl could have sought some colleague's help before requesting equitable tolling.

Barrett has again failed to show that Judge Payne did anything that would cause an objective person, knowing all the relevant facts, to question his impartiality. Barrett has utterly failed to demonstrate a clear and indisputable right to relief.

C.     Circuit Authority Forecloses an Evidentiary Hearing on this Matter

Should this Court deny the petition, Barrett requests a remand for an evidentiary hearing before a different judge.   Although § 2255 itself authorizes evidentiary hearings in appropriate cases, *see United States v. Whalen*, 976 F.2d 1346, 1348-49 (10th Cir. 1992), evidentiary hearings are not appropriate for proceedings under § 455. This Court has found that, in applying the objective standard for disqualification of a judge, "We are limited . . . to outward manifestations [of factual bases for questioning a judge's impartiality] and reasonable inferences drawn therefrom. . . . the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *Nichols*, 71 F.3d at 351 (internal quotations and citations omitted). Because evidentiary development of Barrett's claims could have no impact on the outcome of his request for recusal, this Court should deny his request for a hearing.

23

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for a writ of mandamus.

Dated: November 23, 2009

Respectfully submitted,

LANNY A. BREUER
Assistant Attorney General
U.S. Department of Justice

SHELDON SPERLING
United States Attorney
Eastern District of Oklahoma

/s Jeffrey B. Kahan
JEFFREY B. KAHAN
Trial Attorney
U.S. Department of Justice
1331 F Street, N.W.; Rm. 345
Washington, D.C. 20530
Tel: (202) 305-8910
Fax: (2020 353-9779
e-mail: jeffrey.kahan@usdoj.gov

**CERTIFICATE OF SERVICE**

I, hereby certify that on 23rd day of November, 2009, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David B. Autry, Attorney for Petitioner
Tivon Schardl, Attorney for Petitioner

s/ Christopher J. Wilson
Assistant United States Attorney